UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cr-30032-MGM |
| | ) | |
| MARGARET LUTHRA | ) | |
| a/k/a RITA LUTHRA, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO
COMPEL DISCOVERY
(Dkt. No. 37)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION

On October 21, 2015, Defendant Margaret Luthra, M.D., was charged in a three count

indictment with violating the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(1)(B) ("AKS")

(Count One), wrongfully disclosing individually identifiable health information, in violation of

42 U.S.C. § 1320d-6(a) (Count Two), and obstructing a criminal investigation of a health care

offense, in violation of 42 U.S.C. § 1518 (Count Three) (Dkt. No. 3).  Currently pending is

Defendant's motion to compel the government to provide information responsive to eighteen

discovery requests (Dkt. No. 37).  Defendant contends that she is entitled to this information to

develop her claims of selective and vindictive prosecution and to prepare her defense to the

charge that she violated the AKS.  The government objects to Defendant's motion with limited

exceptions (Dkt. No. 44).

After consideration of the pleadings and after argument on September 7, 2016,

Defendant's motion to compel discovery that is material to her defense is allowed in part and

1

denied in part, and Defendant's motion to compel discovery to support her claims of selective and vindictive prosecution is denied.

II.    BACKGROUND

The charges against Defendant arose from her relationship with Warner Chilcott, a pharmaceutical company that sold Actonel and Atelvia, which are included in a class of drugs known as bisphosphonates that are prescribed to prevent and treat osteoporosis (Dkt. No. 3 at ¶¶ 2, 10).  The following facts are drawn from the indictment (Dkt. No. 3).  *See United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) ("When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true . . . .") (quoting *United States v. Savarese,* 686 F.3d 1, 7 (1st Cir. 2012)).

Defendant was a gynecologist at the Women's Health and Education Center in Springfield, Massachusetts (*id*. at ¶ 1).  Because Defendant "was a high volume prescriber of bisphosphonates in western Massachusetts," in October 2010, a Warner Chilcott sales representative ("Sales Rep. # 1") asked Defendant to participate in Warner Chilcott's speaker program, which was part of Warner Chilcott's aggressive campaign to promote sales of Actonel and Atelvia (*id*. at ¶¶ 3, 11).  Defendant allegedly agreed to become a speaker at medical education ("med. ed.") events in her office (*id*. at ¶ 11).  The government alleges that these med. ed. events involved Defendant speaking to Sales Rep. # 1 for about thirty minutes while Defendant ate food that Sales Rep. # 1 provided to Defendant and her office staff (*id*. at ¶ 12).  On one occasion, Sales Rep. # 1 purportedly provided food for a barbeque that Defendant hosted at her home (*id.*).  Between October 2010 and November 2011, Defendant allegedly received a total of $23,500 from Warner Chilcott for speaker training and for speaking at approximately thirty-one med. ed. events (*id*. at ¶¶ 9, 12).  In return, Defendant is alleged to have "significantly

increased" the number of prescriptions that she wrote for Warner Chilcott's bisphosphonate drugs (*id*. at ¶ 13).  However, the number of her prescriptions for these Warner Chilcott pharmaceuticals dropped sharply after December 2011 when Sales Rep. # 1 left Warner Chilcott and Defendant stopped receiving payments (*id*.).  Medicare, the Federal health care program, paid for some of Warner Chilcott's drugs that Defendant prescribed (*id.* at ¶¶ 4, 9, 13).

Insurers "typically identified the drugs that they paid for on behalf of their members [so-called 'covered drugs'] in a list called a formulary" (*id.* at ¶ 6).  If a drug was not covered on formulary, many insurers required a prior authorization ("PA") from a physician, explaining the medical necessity for the drug, before the insurer would pay for it (*id.* at ¶ 7).

Because a less expensive, generic bisphosphonate was available, the majority of insurance plans did not include Warner Chilcott's Atelvia on their formularies and insurers required a PA to cover it (*id*. at ¶ 17).  When Warner Chilcott launched Atelvia in January 2011, Defendant, who allegedly was being paid to speak at Warner Chilcott's med. ed. programs, began receiving "numerous" denials from insurance companies for Atelvia prescriptions (*id*. at ¶¶ 12, 19).  Defendant allegedly asked Sales Rep. # 1 to assist one of Defendant's medical assistants in completing PAs to obtain insurance coverage for Atelvia because their preparation was time consuming (*id*. at ¶¶ 18, 19).  The government alleges that Defendant gave Sales Rep. # 1 access to her patients' medical records, and Sales Rep. #1 used them to prepare PAs for Atelvia that Defendant signed (*id*. at ¶ 19).  These patient records contained "individually identifiable health information" or "protected health information" as defined by the Health Insurance Portability and Accountability Act (HIPPA) (*id*. at ¶¶ 5, 7).[1]  HIPPA restricts the disclosure of this private health

---

[1] As a physician, Defendant is a "covered entity" under HIPPA and its privacy regulations (Dkt. No. 3 ¶¶ 5, 16).  *See* 45 C.F.R. §§ 160.102(a), 160.103.

information to the patient, the physician and her staff, and the insurance company (*id*. at ¶¶ 5, 7). Defendant was not authorized to disclose the information to Sales Rep. # 1 (*id*. at ¶ 15).

On February 10, 2014, Special Agents from the Office of the Inspector General of the United States Department of Health and Human Services ("HHS"), who were investigating potential federal health care fraud, questioned Defendant about her relationship with Warner Chilcott and Sales Rep. # 1 (*id*. at ¶¶ 21, 22). Defendant allegedly told the HHS agents that Warner Chilcott paid her to read studies and to provide her opinion, and that Sales Rep. # 1 assisted with the preparation of PAs, but did not have access to patients' private medical information (*id*. at ¶ 22). The government alleges that after Defendant's interview, she directed her medical assistant, who Sales Rep. # 1 had assisted in preparing the PAs, to tell the HHS agents that Sales Rep. #1 did not have access to patients' records (*id*. at ¶ 23). Defendant purportedly repeated this instruction to the medical assistant the next day and said that "there is a HIPPA law and there would be hefty fines for them both" if the investigators learned that they shared medical records with an unauthorized person (*id*. at ¶ 24). The HHS investigators interviewed Defendant again on March 7, 2014 when she allegedly told them that Warner Chilcott paid her $3,250 in 2010 for speaker training and $19,500 in 2011 for reading abstracts of clinical trials and writing a research paper (*id*. at ¶ 25). The government alleges that Defendant's representations to the investigators were false (*id.*).

III.    DISCUSSION

Discovery in criminal cases is left to the trial court's discretion. *See United States v. Lewis,* 517 F.3d 20, 23 (1st Cir. 2008). The government has produced automatic discovery in

4

accordance with Fed. R. Crim. P. 16 and LR 116.1(C) and 116.2.[2]  Defendant seeks eighteen

categories of additional discovery to support her claims of selective and vindictive prosecution

and to defend the charge that she violated the AKS.  *See Brady v. Maryland*, 373 U.S. 83, 86

(1963) (*Brady*); Fed. R. Crim. P. 16(a)(1)(E).  Each category will be discussed in turn.

     A.    <u>Selective Prosecution</u>

     Defendant alleges that she has been singled out for prosecution "based on an amalgam"

of race, religion, national origin, and gender -- she is "non-Caucasian," Hindu, "of Indian origin,"

and female -- and seeks discovery to support a future motion to dismiss the indictment for

selective prosecution (Dkt. No. 38-1 at 5-6 ¶¶ 13, 14, 15).  *Lewis*, 517 F.3d at 26.  The

government responds that Defendant is not entitled to discovery on this basis because she cannot

satisfy her evidentiary burden to demonstrate both the discriminatory effect of the prosecution

and the prosecutor's discriminatory intent, which are essential to a successful discovery request.

*See United States v. Armstrong*, 517 U.S. 456, 465 (1996).  The government's position is more

persuasive:  Defendant fails to make the requisite showing that entitles her to discovery to

support a selective prosecution claim.

---

[2] The government represents that it has produced the following:  "all grand jury transcripts and exhibits of witnesses who testified about . . . [D]efendant; all interview reports and exhibits of witnesses who made statements about . . . [D]efendant; all agent notes of interviews of witnesses who made statements about . . . [D]efendant; all documents relating to the Master Speaker Services Agreement between . . . [D]efendant and Warner Chilcott; all Statements of Work signed by . . . [D]efendant and submitted to Warner Chilcott; a chart of all speaker fees that Warner Chilcott paid . . . [D]efendant; a chart of all of . . . [D]efendant's speaker events for Warner Chilcott; a chart of . . . [D]efendant's prescribing of Warner Chilcott's drugs between 2009 and 2013; a chart of . . . [D]efendant's prescribing of all bisphosphonates paid for by Medicare between 2009 and 2013; expense report data for the Warner Chilcott sales representative that called on . . . [D]efendant; and documents and attachments that hit on the search term 'Luthra' from electronic databases produced by Warner Chilcott and its third party vendor, P-Value" (Dkt. No. 44 at 4).

"A selective prosecution claim asks the [c]ourt to exercise judicial power over a core Executive function — the enforcement of criminal laws." *United States v. Khanu*, 664 F. Supp. 2d 28, 31 (D.D.C. 2009). "In an ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [her] discretion.'" *United States v. Mathur*, No. 2:11-cr-00312-MMD-PAL, 2012 WL 3135532, at *3 (D. Nev. Aug. 1, 2012) (quoting *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)). "A prosecutor's discretion is, however, subject to constitutional limits such as the equal protection component of the Fifth Amendment's Due Process Clause, which prohibits a prosecutor from making decisions based on race, religion, or other arbitrary classifications." *Khanu*, 664 F. Supp. 2d at 31 (citing *Armstrong,* 517 U.S. at 464). *See also Wayte v. United States*, 470 U.S. 598, 608 (1985).

"In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Armstrong,* 517 U.S. at 465 (quoting *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14–15 (1926)). "Carrying this burden entails a binary showing: the defendant must adduce clear evidence of both [1] the discriminatory effect of the prosecution and [2] the prosecutor's discriminatory intent." *Lewis*, 517 F.3d at 25 (citing *Armstrong,* 517 U.S. at 465). *See also Khanu*, 664 F. Supp. 2d at 31 ("The defendant must show both (1) that he was singled out for prosecution from others similarly situated and (2) that his prosecution was motivated by a discriminatory purpose.") (citing *United States v. Palfrey,* 499 F. Supp. 2d 34, 39 (D.D.C. 2007)). "[T]he standard is a demanding one." *Armstrong,* 517 U.S. at 463.

For this purpose, the evidence in support of the asserted discriminatory effect must comprise a credible showing that similarly situated individuals who do not share the

protected characteristic were not prosecuted.  Similarly, the evidence in support of the
asserted discriminatory intent must consist of a credible showing that the government
chose to prosecute "at least in part because of, not merely in spite of," the defendant's
protected characteristic.

*Lewis*, 517 F.3d at 25 (internal citations omitted).

To obtain discovery to support a selective prosecution claim, the defendant must present

"'some evidence' tending to show both discriminating effect and discriminatory intent." *Lewis,*

517 F.3d at 25 (quoting *Armstrong*, 517 U.S. at 468).  *See also Attorney Gen. v. Irish People,*

*Inc.,* 684 F.2d 928, 932 (D.C. Cir. 1982) (holding that defendant must make a colorable showing

of both selectivity and improper motivation to obtain discovery).  "Just as the standard for

ultimately proving a selective prosecution claim is a rigorous one, so too is the evidentiary

threshold for obtaining discovery from the government to support such a claim." *United States v.*

*Olvis*, 97 F.3d 739, 743 (4th Cir. 1996) (citing *Armstrong*, 517 U.S. at 468).  "A significant

barrier to discovery is necessary because discovery 'imposes many of the costs present when the

Government must respond to a prima facie case of selective prosecution'; it diverts governmental

resources and discloses prosecutorial strategies." *Id.* (quoting *Armstrong*, 517 U.S. at 468).  "It

follows that discovery will not be allowed unless the defendant's evidence supports each of the

two furcula of his selective prosecution theory: failure on one branch dooms the discovery

motion as a whole." *Lewis*, 517 F.3d at 25.

      1.     Defendant fails to demonstrate that similarly situated offenders were not
            prosecuted.

To present "some evidence" of discriminatory effect in pursuit of discovery, *Armstrong*,

517 U.S. at 468, a defendant must make "a credible showing that similarly situated individuals

who do not share the protected characteristic[s] were not prosecuted." *Lewis*, 517 F.3d at 25.

"[D]efendants are similarly situated when their circumstances present no distinguishable

legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.*

Establishing the "pool" of similarly situated offenders is the initial step in determining whether Defendant has borne her evidentiary burden of demonstrating discriminatory effect. *Id.* at 27. The pool is comprised of "similarly situated offender[s] . . . outside the protected class who [have] committed roughly the same crime[s] under roughly the same circumstances but against whom the law has not been enforced." *Id.* (citing *Armstrong*, 517 U.S. at 469). To determine whether other offenders are in a defendant's pool, courts consider factors that are material to a prosecutor's "decision as to whether or not to prosecute." *Id.* "Material prosecutorial factors are those that are relevant -- that is, that have some meaningful relationship either to the charges at issue or to the accused -- and that might be considered by a reasonable prosecutor." *Id.* The "legitimate factors that may motivate a prosecutor's decision to bring a case against a particular defendant . . . include 'the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan.'" *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) (quoting *Armstrong,* 517 U.S. at 465). *See United States v. Brantley*, 803 F.3d 1265, 1271–72 (11th Cir. 2015), *cert. denied,* 136 S. Ct. 1833 (2016) ("'a "similarly situated" person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant . . . .'") (quoting *Smith,* 231 F.3d at 810).

Here, in order to present some evidence of selective prosecution to obtain discovery, Defendant is required show that there are other physicians in *the District of Massachusetts* who do not share Defendant's protected characteristics and who accepted kickbacks from Warner

Chilcott, violated the HIPPA privacy laws, and interfered with the administration of justice by lying to investigators and by directing another to make false statements. *See Lewis*, 517 F.3d at 26. Defendant's argument – that the pool of offenders is comprised of about 2,000 physicians who received speaker fees from Warner Chilcott – misses the mark (Dkt. No. 38 at 30). Defendant fails to offer any law to support her position that the pool of similarly situated offenders who could potentially be prosecuted includes physicians who committed parallel crimes outside the District of Massachusetts. "[T]he proper focus in discriminatory prosecution cases is on the ultimate decision-maker," who, in this case, is the United States Attorney for the District of Massachusetts (Dkt. No. 3). *United States v. Gomez-Lopez*, 62 F.3d 304, 306-07 (9th Cir. 1995) (quoting *United States v. Erne*, 576 F.2d 212, 216-17 (9th Cir. 1978)). Each United States Attorney's authority is limited to the prosecution of crimes within his or her district. *See* 28 U.S.C. § 547(1) ("each United States attorney, within his district, shall prosecute for all offenses against the United States"). The question of whether a United States Attorney has the authority to prosecute a particular federal crime is determined by an analysis of venue. "A defendant in a criminal case has a constitutional right to be tried in a proper venue." *United States v. Lanoue*, 137 F.3d 656, 661 (1st Cir. 1998). *See United States v. Johnson*, 323 U.S. 273, 275 (1944) (noting that U.S. Const. art. III, § 2, cl. 3 and the Sixth Amendment provide a right to trial in the state where the crime was committed). "Unless a statute or [the criminal] rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. Here, because the statutes defining the offenses with which Defendant is charged do not identify the venue for prosecution, *see* 18 U.S.C. § 1518; 42 U.S.C. §§ 1320a-7b, 1320d-6, Defendant must be prosecuted in the District of Massachusetts where she is alleged to have committed the crimes. *See* 28 U.S.C. § 547(1); Fed. R. Crim. P. 18.

Accordingly, contrary to Defendant's assertion, the pool of similarly situated physicians for the selective prosecution analysis is limited to Massachusetts. *Compare United States v. Lewis*, Criminal No. 05-40001-FDS, 2006 WL 4385752, at *5-6 (D. Mass. May 11, 2006), *aff'd.*, 517 F.3d 20 (1st Cir. 2008) (considering motion for discovery to support selective prosecution, defendant presented, and court considered, the number of prosecutions for similar conduct in the District of Massachusetts). Defendant is being prosecuted by a United States Attorney whose authority is limited to the prosecution of crimes within the District of Massachusetts and who could not have initiated prosecutions of any physicians who received speaker fees from Warner Chilcott unless that physician committed a crime in Massachusetts. *See* 28 U.S.C. § 547(1).

As an officer of the court, the AUSA assigned to this case represented that Defendant is the only physician in the District of Massachusetts who, in addition to allegedly receiving kickbacks from Warner Chilcott, allowed a Warner Chilcott sales representative to have access to protected patient information, and obstructed justice by making false statements to investigators and by encouraging her employee to do the same (Dkt. No. 44 at 7). In particular, the "general deterrence value" of prosecuting Defendant for obstruction of justice was a legitimate factor in the prosecutor's decision to charge Defendant with violating 18 U.S.C. § 1518. *Armstrong*, 517 U.S. at 465. *See Olvis*, 97 F.3d at 744. Other courts that have denied discovery requests for selective prosecution claims have determined that prosecutors permissibly considered similar obstructive conduct as distinguishing one offender who was prosecuted from another who was not. *Compare Brantley,* 803 F.3d at 1272-73 (holding that defendant was not similarly situated to her purported comparator who was not charged because defendant failed to disclose a murder and "took affirmative steps to conceal it"); *Olvis*, 97 F.3d at 744 (holding that defendant did not establish discriminatory effect because she was not similarly situated to

another who was not prosecuted; defendant's alleged perjury before the grand jury and refusal to cooperate with law enforcement distinguished her case). *Cf. United States v. Segal*, 495 F.3d 826, 833 (7th Cir. 2007) ("A prosecutor cannot be said to act vindictively by taking into account a defendant's perceived efforts to intimidate witnesses.").

Defendant's failure to sustain her burden of demonstrating that other similarly situated offenders committed the same crimes in Massachusetts sinks her motions to compel discovery to support dismissal of the indictment on the ground of selective prosecution. *See Lewis*, 517 F.3d at 25.

2.    Defendant fails to present evidence that the prosecutor intended to discriminate against her.

Although the court need not reach the second prong of the selective prosecution analysis due to Defendant's lack of evidentiary support for the first prong, the court briefly addresses the second prong:  discriminatory intent.  *See id*.  Defendant's argument to support her request for discovery is similar to the one that she makes to support her discriminatory effect claim:  "among thousands of *identically* situated physicians, only [Defendant] was indicted" (Dkt. No. 38 at 34) (emphasis original).  "A mere allegation of selective prosecution by the defendant, however, does not require the government to disclose the contents of its files." *United States v. Matter*, 818 F.2d 653, 655 (8th Cir. 1987).

"'Discriminatory intent can be proved by either direct or circumstantial evidence.'" *See United States v. Guivas-Soto*, Criminal No. 14-080 (FAB), 2015 WL 3439100, at *5 (D.P.R. May 29, 2015) (quoting *United States v. Deberry,* 430 F.3d 1294, 1299 (10th Cir. 2005)). Defendant fails to present "'some evidence' tending to show" that the prosecutor intended to single her out for prosecution because of her "protected characteristic[s]." *Lewis*, 517 F.3d at 25 (quoting *Armstrong*, 517 U.S. at 468). *See also Wayte*, 470 U.S. at 608. As discussed earlier,

there are non-discriminatory reasons why Defendant is the only physician facing charges in the

District of Massachusetts:  she permitted unauthorized access to private patient records; and she

impeded the government's investigation into Warner Chilcott.  Defendant has not pointed to any

evidence from which it could be inferred that the prosecutor was motivated by Defendant's

membership in a protected class. [3]  *See id.*

Because Defendant fails to meet her burden to "produce 'some evidence' making a

'credible showing' of both discriminatory effect and discriminatory intent," her motion to compel

discovery to support her selective prosecution claim is denied.  *Olvis,* 97 F.3d at 743 (quoting

*Armstrong,* 517 U.S. at 468).

B.      Vindictive Prosecution

Defendant also seeks discovery to enable her to construct a viable claim of vindictive

prosecution.  "A vindictive prosecution - one in which the prosecutor seeks to punish the

defendant for exercising a protected statutory or constitutional right - violates a defendant's Fifth

Amendment right to due process."  *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008) (citing

*United States v. Goodwin*, 457 U.S. 368, 372 (1982)).  *See Lanoue*, 137 F.3d at 664.  "A

_____

[3] Defendant further argues that the government's failure to disclose the gender, national origin,
religion, and race of the physicians who Warner Chilcott paid as speakers or who allowed
Warner Chilcott's representatives to have access to protected patient information and who were
not prosecuted is circumstantial evidence of its discriminatory motive (Dkt. No. 38 at 34-35).
The government responds that it does not have documents responsive to this request (Dkt. No. 44
at 8).  It has previously disclosed to Defendant the names of all doctors who Warner Chilcott
paid to be speakers and the amounts they were paid (*id.*).  If discovery in support of a selective
prosecution claim is ordered, *Armstrong* says that "the Government must assemble from its own
files documents which might corroborate or refute the defendant's claim."  *Armstrong*, 517 U.S.
at 468.  This suggests that the government is not required to create material responsive to a
discovery request.  *See id.*  In any event, for the reasons discussed above, Defendant would not
be entitled to information about any physician outside of Massachusetts and is not entitled to
discovery to support a selective prosecution claim.

defendant may establish a vindictive prosecution either (1) by producing evidence of actual

vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of

vindictiveness to warrant a presumption of vindictiveness." *Jenkins*, 537 F.3d at 3 (citing *United*

*States v. Marrapese,* 826 F.2d 145, 147 (1st Cir. 1987)).  "If a defendant raises a presumption of

vindictiveness, the prosecutor may rebut the presumption by showing objective reasons for its

charges."  *Id.*  "It is difficult to make . . . a showing [that raises a presumption of vindictiveness]

pretrial, however, in light of the broad discretion afforded the prosecutor to determine who

should be prosecuted and for what crime, and the presumption that the prosecutor has exercised

that discretion in good faith."  *United States v. Bucci*, 582 F.3d 108, 112 (1st Cir. 2009) (citing

*Goodwin*, 457 U.S. at 377).  *See also Bordenkircher*, 434 U.S. at 364.  "[C]ourts should go very

slowly in embracing presumptions of prosecutorial vindictiveness in pretrial proceedings."

*United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997).

     The standard of proof for a defendant who is seeking discovery to support dismissal on

the grounds of vindictive prosecution is derived from the standard that the Court articulated in

*Armstrong* regarding requests for discovery to prove selective prosecution.  *See Bucci*, 582 F.3d

at 113 (citing *Armstrong*, 517 U.S. at 468); *Stokes*, 124 F.3d at 45.  "In light of the presumption

that a prosecutor has acted in good faith in exercising [her] discretion to make charging

decisions, courts require a defendant seeking discovery first to come forth with 'some' objective

evidence tending to show the existence of prosecutorial vindictiveness."  *Id.  See also United*

*States v. Wilson,* 262 F.3d 305, 315 (4th Cir. 2001); *United States v. Sanders,* 211 F.3d 711, 717

(2d Cir. 2000); *United States v. Dwyer*, 287 F. Supp. 2d 82, 88 (D. Mass. 2003).

     In an effort to raise a presumption of vindictiveness sufficient to obtain discovery,

Defendant presents the following evidence:  (1) she was indicted after she declined to admit

wrongdoing and cooperate with the prosecutor; (2) she was charged with violating only one

obstruction of justice statute instead of two statutes as a letter from the government suggested

that she might be; and (3) she was arrested in the early morning at her home on a day when all of

the judges and magistrates of the United States District Court for the District of Massachusetts

were at a conference (Dkt. No. 38 at 30; Dkt. No. 38-1 at ¶¶ 7-11).  Defendant's proffered

evidence fails to advance her claim of vindictive prosecution.  Each assertion will be discussed in

turn.

     Defendant's first two arguments are based on an April 2, 2014 letter that she received

from an Assistant United States Attorney (AUSA) for the District of Massachusetts.  The letter

notified Defendant that she was "the target of a federal grand jury investigation in the District of

Massachusetts regarding possible violations of [specific provisions of] the United States code,"

which meant "that the grand jury has heard substantial evidence of [her] involvement in criminal

activity and it is likely that . . . [the United States Attorney's] office will recommend to the grand

jury that it indict" (Dkt. No. 38-6).  Prior to proceeding further, the AUSA requested a meeting

with her attorney to discuss "potential charges, whether [she] wish[ed] to testify before the grand

jury, [and] other matters" (*id.*).  According to Defendant, "the government sought to have [her]

state that [she] had prescribed Actonel and Atelvia in part in exchange for payments from

Warner Chilcott" (Dkt. No. 38-1 at ¶ 8).  She refused to do so (*id*. at ¶ 9).  The indictment that

followed her failure to cooperate and admit guilt, however, is not evidence that the prosecutor

was likely motivated by vindictiveness.

     "A prosecutor should remain free before trial to exercise the broad discretion entrusted to

[her] to determine the extent of the societal interest in prosecution."  *Goodwin*, 457 U.S. at 382.

The government notified Defendant that it had probable cause to indict her for three offenses,

14

and she does not challenge the existence of probable cause (Dkt. No. 38-6). *See Kaley v. United States*, 134 S. Ct. 1090, 1097 (2014) ("'[A]n indictment "fair upon its face," and returned by a "properly constituted grand jury,"' . . . 'conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged") (quoting *Gerstein v. Pugh,* 420 U.S. 103, 117 n.19 (1975)); *Bordenkircher,* 434 U.S. at 364 ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Prior to indictment, the AUSA offered Defendant an opportunity to plead guilty and to cooperate (Dkt. No. 38-1 at 5 ¶ 8; Dkt. No. 38-6). She was free to reject the offer, and she did so (Dkt. No. 38-1 at 5 ¶ 9). "[I]n the give-and-take of plea bargaining, 'there is no . . . element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.'" *Jenkins*, 537 F.3d at 4 (quoting *Bordenkircher*, 434 U.S. at 363). *See Goodwin*, 457 U.S. at 382-83. The fact that the government postponed the return of the indictment until after she rejected the plea offer and the opportunity to cooperate in the investigation does not make the prosecution vindictive.

It is well-settled that "[t]he fact that the government followed through on a threat it made during plea bargain negotiations does not, by itself, constitute prosecutorial misconduct." *Lanoue*, 137 F.3d at 665. *See Bordenkircher*, 434 U.S. at 365 ("[T]he course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment."); *Jenkins*, 537 F.3d at 4 (finding no prosecutorial vindictiveness where the prosecutor filed a section 851 enhancement information after plea negotiations were unsuccessful); *United States v. Williams,*

47 F.3d 658, 662 (4th Cir. 1995) (holding that a prosecutor is free to proceed with a more severe prosecution if, in the context of plea negotiations, a defendant refuses to cooperate in the criminal investigation of another person); *United States v. Long*, 823 F.2d 1209, 1212 (7th Cir. 1987) ("[T]here could be prosecutorial vindictiveness only if [defendant's] refusal [to cooperate] resulted in treatment harsher than would have occurred if the government had not sought his assistance.").

According to Defendant, the April 2014 letter contains additional evidence of vindictive prosecution. The letter states that she was the target of a federal grand jury investigation "regarding possible violations of the United States Code," including 18 U.S.C. §§ 1001 and 1518 (Dkt. No. 38-6). Section 1001(a) makes it a crime to "make[] any materially false, fictitious, or fraudulent statement or representation," while § 1518(a) punishes one who "willfully prevents, obstructs, misleads, delays or attempts to prevent, obstruct, mislead, or delay the communication or records relating to a violation of a Federal health care offense to a criminal investigator . . . ." Defendant learned from her attorney that "the Department of Justice decided not to prosecute people" for violations of 18 U.S.C. § 1001 (Dkt. No. 38-1 at 5 ¶ 7). She alleges that the prosecutor's "eva[sion]" of the Department of Justice's policy decision by charging her with violating 18 U.S.C. § 1518 instead of § 1001 "clearly demonstrates the prosecutor's impermissible animus towards [her] because of [her] decision to exercise [her] constitutional rights" (*id.*).

Based upon the facts alleged in the indictment, the prosecutor had probable cause to charge defendant with violating both statutes, as the target letter indicated (Dkt. No. 36-1). *See Kaley*, 134 S.Ct. at 1103. Defendant is alleged to have lied to the investigators on two occasions, in violation of both statutes (Dkt. No. 3 at ¶¶ 22, 25). The government also alleges that she

directed her medical assistant to lie to the investigators (Dkt. No. 3 at ¶¶ 23, 24).  This form of

interference with an investigation is prohibited by 18 U.S.C. § 1518, but is not included in the

conduct proscribed by § 1001.

Defendant's assertion -- that the prosecutor's vindictiveness is evidenced by the fact that

she was indicted for violating only one statute, when she could have been charged with violating

two -- defies logic and is insufficient to raise a presumption of vindictiveness that entitles her to

discovery.  If a prosecutor is not vindictive for increasing the number of charges, it follows that

she is not vindictive for decreasing them.  *See United States v. Young,* 955 F.2d 99, 108 (1st Cir.

1992) ("[T]he mere bringing of a new indictment with added counts is not in itself vindictive

behavior, nor does it raise a presumption of vindictiveness . . . ."); *United States v. Santiago-*

*Rodriguez*, 990 F. Supp. 2d 129, 131–32 (D.P.R. 2013) (same).

Defendant's last proffer of evidence in an attempt to demonstrate prosecutorial

vindictiveness involves the circumstances of her arrest.  According to Defendant, her attorney

told the AUSA that she would voluntarily appear in response to a summons if she were indicted

(Dkt. No. 38-1 at 5 ¶ 10).  Instead, federal agents arrested her at her home at 6:00 A.M., watched

her dress, handcuffed her, and drove her to the Federal courthouse in Boston where she was held

in a cell most of the day because all of the district court judges and magistrate judges were

attending an all-day conference (*id*. at ¶ 11).  She appeared before a magistrate judge in the late

afternoon and was released on an unsecured bond with conditions (Dkt. No. 10; Dkt. No. 38-1 at

5 ¶ 11).  While the circumstances of Defendant's arrest are unfortunate and are not a model for

repetition, courts in this district and others have found that similar circumstances were not

evidence of a vindictive prosecution.  *See Dwyer*, 287 F. Supp. 2d at 91 ("[T]he court does not

believe that the decision to have Defendant arrested rather than summoned to appear for

17

arraignment, even if that were a deliberate decision, is sufficient grounds for further discovery.");

*Mathur*, 2012 WL 3135532, at *6 (holding that despite the AUSA's representation that defendant would be permitted to self-surrender, there was "nothing punitive" about the AUSA sending the FBI to arrest him).

Defendant has not made a sufficient showing to entitle her to discovery to support a motion to dismiss for either selective or vindictive prosecution.  Accordingly, her discovery requests that appear to be related to these claims, Defense Request ## 2, 6, and 7 through 18, are denied.[4]

C.      Discovery Requests Pursuant to *Brady* and Fed. R. Crim. P. 16(a)(1)(E)

Defendant's remaining discovery requests (Defense Request ## 1, 3, 4 & 5) relate to Count One, the charge that she violated the AKS.  On June 27, 2016, after the government complied with its discovery obligations under Fed. R. Crim. P. 16(a) and LR 116.1 and 116.2, the parties appeared before the court for a status conference at which time Defendant sought a means by which to gain "access" to the contents of three databases that she had requested and received in discovery (Dkt. No. 39 at 1-6, 9-11, 13, 17, 20).  The databases were part of the government's larger investigation into Warner Chilcott, which generated eight million pages of documents (Dkt. No. 39 at 6, 13).  According to the government, the databases include "voluminous" spreadsheets containing the names of all speakers that Warner Chilcott paid and

---

[4] Defendant moves to compel production of "[m]aterials relating to total amounts paid by Warner Chilcott to physicians who had entered into the Master Speaker Services Agreement" (Dkt. No. 37, Defense Request # 6).  The government represents that it has produced this information (Dkt. No. 44 at 11 n.2).  If this material has not been produced, Defendant's request for this material is denied because it relates to Defendant's pursuit of evidence to support a selective prosecution claim.  For the reasons discussed earlier, Defendant fails to make a sufficient evidentiary showing of selective prosecution to entitle her to discovery.

the dates of payments along with similarly sized spreadsheets containing the volume of Warner

Chilcott drugs that the company's targeted physicians prescribed each week (Dkt. No. 39 at 6-8).

The parties agreed to confer in an attempt to devise a way for the government to provide

Defendant access to the materials that she sought to prepare her defense (Dkt. No. 39 at 21-23).

If the parties were unable to agree on a method to provide Defendant access, the court directed

Defendant to file a motion to compel discovery by July 15, 2016 (Dkt. No. 39 at 23-24, 35).

Apparently, the parties did not reach agreement because Defendant moved to compel (Dkt. No.

37).

The government represents that it has complied with its discovery obligations by

providing Defendant with a significant amount of material, including a chart showing the

amounts Defendant received in speaker's fees from Warner Chilcott and the volume of

bisphosphonates that she prescribed and for which Medicare paid between 2009 and 2013 (Dkt.

No. 39 at 4, 5-6, 9; Dkt. No. 44 at 4).  Defendant now seeks similar bisphosphonate prescription

information for all physicians "in the United States," with a breakdown of the amounts of

Actonel and Atelvia that these doctors prescribed between 2011 and 2013, and seeks "reasons for

the increase or decrease in volume" of Actonel and Atelvia prescriptions (Dkt. No. 37, Defense

Requests ## 1 & 3).[5]  Defendant cites Fed. R. Crim. P. 16(a)(1)(E) and *Brady* to support her

requests.

---

[5] The government suggests that Defendant has received information on Defense Request # 4
"relating to the downturn in the bisphosphonate market during . . . 2011 – 2013" and Defendant's
statement of facts in her memorandum in support of her motion to dismiss buttresses the
government's assertion (Dkt. No. 37 No. 4; Dkt. No. 38 at 7-8; Dkt. No. 44 at 12 n.3).  Although
the government contends that this is not *Brady* material, if the Defendant specifies "exactly what
more she is looking for the government is willing to produce any relevant documents in its
custody and control" (Dkt. No.44 at 12 n.3).

Both *Brady* and rule 16(a)(1)(E) entitle Defendant to inspect and copy the material in

Defense Requests ## 1 & 3 because Defendant has made an adequate showing that this

information is exculpatory under *Brady* and is "material to preparing [her] defense" under the

rule:[6] it could explain the rise and fall in the volume of Defendant's prescriptions for Warner

Chilcott's products for reasons unrelated to the speaker's fees that she received.  "In a line of

cases beginning with *Brady,* the Supreme Court has made clear that the prosecution in a criminal

case has an affirmative duty to disclose information in its possession that is favorable to the

defendant and material to the question of guilt or punishment."  *United States v. Tsarnaev*,

Criminal Action No. 13-10200-GAO, 2013 WL 6196279, at *1 (D. Mass. Nov. 27, 2013) (citing

*Kyles v. Whitley,* 514 U.S. 419, 432–33 (1995)).  *See also United States v. Prochilo,* 629 F.3d

264, 268 (1st Cir. 2011).  "Evidence is 'material' for these purposes only if there is a reasonable

probability that it could affect the outcome of the trial."  *Tsarnaev*, 2013 WL 6196279, at *1

(citing *United States v. Bagley,* 473 U.S. 667, 682 (1985)).  "Generally speaking, [this so-called]

*Brady* material falls into one of two categories — that which tends to be more or less directly

exculpatory in that it casts doubt on the defendant's guilt, and that which is indirectly exculpatory

---

[6] Federal Rule of Criminal Procedure 16(a)(1)(E) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> > (i) the item is material to preparing the defense;
> >
> > (ii) the government intends to use the item in its case-in-chief at trial; or
> >
> > (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).

in that it tends to impeach the reliability of other prosecution evidence." *Id.* "The government's obligation to provide *Brady* material to the defendant is ongoing." *Id.*

At trial, the government will be required to prove that Defendant violated the AKS from October 2010 to November 2011 by knowingly and willingly accepting payments from Warner Chilcott's Sales Rep. # 1 in exchange for prescribing its osteoporosis drugs for her Medicare patients (Dkt. No. 3 ¶¶ 9-13).  *See* 42 U.S.C. § 1320a-7b(b)(1)(B).  According to the government, the charge will be proved by evidence that the number of Defendant's prescriptions for these drugs increased after she began participating as a speaker in the med. ed. programs and receiving payments from Sales Rep. #1, and decreased after Sales Rep. # 1 left Warner Chilcott's employ (Dkt. No. 3 at ¶¶ 12, 13).

Defendant, for her part, denies a connection between Warner Chilcott's payments to her and the volume of Actonel and Atelvia that she prescribed (Dkt. No. 38-1 at 5 ¶ 9).  She claims that she only prescribed drugs that were "medically appropriate" for each patient (*id.*).

Defendant has a right under *Brady* and rule 16(a)(1)(E) to the information that she seeks in Defense Requests ## 1 & 3 because it may yield evidence that refutes the government's evidence of her motive for prescribing Actonel and Atelvia.  For example, if the requested information produces evidence to suggest that Defendant's volume of prescriptions for Actonel and Atelvia was similar to that of physicians who did not receive payments from Warner Chilcott, or that the decrease in her Atelvia prescriptions after November 2011 was attributed to the drug's lack of efficacy, a reasonable inference could be drawn that Warner Chilcott's payments did not influence the amounts of Actonel and Atelvia that Defendant prescribed.[7]  The

---

[7] Defendant also requests material showing the increase or decrease in the volume of Actonel and Atelvia prescribed by physicians who entered into the Masters Speaker Services Agreement with Warner Chilcott between 2011 and 2013 (Dkt. No. 37, Defense Request # 2).  This request,

government's responses to Defendant's requests, however, are limited to material that is within

the government's possession, custody, or control. *See Brady*, 373 U.S. at 87; Fed. R. Crim. P.

16(a)(1)(E). [8]

---

which could facilitate comparison of Defendant with other doctors who received payments from
Warner Chilcott, is related to Defendant's claim that she is entitled to discovery to support her
claim of selective prosecution. This request is being denied for the reasons discussed earlier. To
refute the allegation that Defendant violated the AKS, the relevant comparison is between
Defendant's volume of prescriptions for Actonel and Atelvia and the amounts prescribed by
physicians who were not paid to speak at Warner Chilcott's med. ed. programs. Defense Request
# 1 includes this information.

 The fact that there was a decline in Atelvia sales is material to defendant's case. It
appears from Defendant's memorandum in support of her motion to compel, however, that she
has received adequate information responsive to Defense Request # 5: "[m]aterials relating to
the failure of Atelvia to 'meet company expectations,' to have 'disappointing sales,' and 'not [be] a
terribly successful drug'" (Dkt. No. 37, Defense Request # 5; Dkt. No. 38 at 7-8). Accordingly,
Defense Request # 5 is denied because the government has already provided this information.

[8] Defendant suggests that the government has possession, custody, or control of material to
which it has access pursuant to the cooperation provision of the plea agreement between the
United States Attorney for the District of Massachusetts and Warner Chilcott in *United States v.
Warner Chilcott*, Crim. No. 15-cr-10327-FDS (Dkt. No. 52-2 Ex. 3 at 6). This agreement limits
Warner Chilcott's cooperation to investigations of its "current and former officers, agents and
employees" not to physicians who prescribed its products (*id.*). Defendant is not included in
these categories. The government's sentencing memorandum in that case indicates that Warner
Chilcott's cooperation "assisted" in the prosecution of Defendant (Dkt. No. 52-2 Ex. 4 at 11). To
the extent that material responsive to Defense Requests ## 1 & 3 related to Defendant is within
the government's possession, custody, or control pursuant to its cooperation agreement with
Warner Chilcott, the government must produce this information if it has not already done so.

 At the two hearings before the court, the government indicated that it will use data from
the Center for Medicare and Medicaid Services ("CMS") to prove Defendant's pattern of
prescribing Warner Chilcott's drugs, but it does not have access to CMS's data that shows other
physicians' prescription patterns (Dkt. No. 39 at 29). The court's order does not require the
government to provide material from CMS that is responsive to Defense Requests ## 1 & 3.
From the record, it appears that this material is not in the prosecutor's possession, custody, or
control because CMS did not participate in the investigation of Defendant. *See United States v.
Castro*, 502 F. Supp. 2d 218, 225 (D.P.R. 2007) ("Evidence 'within [the government's]
possession' includes exculpatory information in the possession of any agency that participated in
the investigation of the crime charged.") (quoting *Kyles*, 514 U.S. at 438); *United States v.
DeCologero*, Criminal Action No. 01-10373-RWZ, 2013 WL 3728409, at *5 (D. Mass. July 11,
2013) (finding that the prosecution is not required to produce evidence from other government
agencies that are not part of the "prosecution team") (citing *United States v. Chalmers*, 410 F.
Supp. 2d 278, 287-90 (S.D.N.Y. 2006)).

In summary, Defense Requests ## 1 & 3 are allowed to the extent that the requested information is in the government's possession, custody, or control.  The government has agreed to provide information responsive to Defense Request # 4.  In order to facilitate the response to these requests, the court directs the government, on or before October 21, 2016, to propose reasonable terms that it can use to search the databases for the requested material, and Defendant to respond to these proposed search terms on or before October 31, 2016.

IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to compel (Dkt. No. 37) is allowed only as to Defense Requests ## 1, 3 & 4, to the extent previously described, and is otherwise denied.

Dated:  October 12, 2016                          /s/ Katherine A. Robertson
                                                  KATHERINE A. ROBERTSON
                                                  UNITED STATES MAGISTRATE JUDGE