# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| United States of America | **CRIMINAL NO. 15-CR-30032-MGM** |
| v. | **ORAL ARGUMENT REQUESTED** |
| Rita Luthra, | |
| Defendant. | |

## RITA LUTHRA, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO COMPEL DISCOVERY OF GRAND JURY INSTRUCTIONS

### INTRODUCTION

Rita Luthra, M.D., ("Dr. Luthra") submits this memorandum of law in support of her motion to compel the production of the legal instructions given to the two grand juries that sat in this case. The first grand jury returned its indictment (the "Original Indictment") on October 21, 2015. A second, different, grand jury returned its indictment (the "Superseding Indictment") on August 1, 2017.

The government has already provided Dr. Luthra with the transcripts and relevant exhibits relating to the testimony of numerous witnesses before the grand jury that returned the Original Indictment. The government has informed Dr. Luthra that it will likewise provide the full grand jury transcripts and exhibits relating to the Superseding Indictment.

Dr. Luthra now requests only the disclosure of the transcript of legal instructions given to each grand jury, as well as any the transcripts of colloquies between the members of the grand juries and the prosecutors regarding questions of law.

## FACTS

- In 2012, the Health Care Fraud Unit of the U.S. Attorney's Office in Boston began an investigation into various practices of the Warner Chilcott pharmaceutical company. The investigation also involved the activities of individual Warner Chilcott employees and individual physicians who prescribed Warner Chilcott pharmaceutical products.
- Dr. Rita Luthra, the defendant in this case, was one of the individuals who fell within the ambit of the government's investigation.
- In early 2014, government agents spoke with Dr. Luthra and two of her employees.
- In April 2014, Dr. Luthra received a "target letter" from the U.S. Attorney's Office.
- In January 2015, counsel for Dr. Luthra and counsel for the government engaged in discussions regarding resolving the investigation regarding Dr. Luthra prior to any indictment of her.
    - As part of those negotiations, the government informed Dr. Luthra, through counsel, that if she wanted to resolve the case short of indictment she would have to admit that she had violated 42 U.S.C. § 1320a, the federal Anti-Kickback Statute (the "AKS").
    - Dr. Luthra, through counsel, was told that to avoid indictment she would have to testify truthfully at trial against senior Warner Chilcott executives, including the CEO.
    - Dr. Luthra, through counsel, was told that in return for admitting that she violated the AKS, and for testifying for the government, she would be given immunity from prosecution.
    - Dr. Luthra refused to admit she had violated the AKS, because she had not.
- On October 21, 2015, a grand jury returned the Original Indictment.
- On October 22, 2015, the government arrested Dr. Luthra.
- In 2016, the government went to trial against Carl Reichel, the former President of Warner Chilcott Pharmaceuticals. After a trial of many weeks in U.S. District Court in Boston, the jury began its deliberations in the afternoon of the final day of testimony. It returned a verdict of Not Guilty the following morning.
    - Dr. Luthra was not called as a witness in this trial.
    - To Dr. Luthra's knowledge, no Massachusetts physician was called as a witness in this trial.
- On July 7, 2017, Dr. Luthra filed a Motion to Dismiss the indictment against her.
- On August 1, 2017, rather than file a Response to Dr. Luthra's Motion to Dismiss, the government filed the Superseding Indictment, using a new grand jury, which had returned the Superseding Indictment earlier that day.
    - In the face of Dr. Luthra's Motion to Dismiss, the Superseding Indictment abandoned Count 1 (the AKS charge), which the government had previously insisted Dr. Luthra admit to, in order to avoid indictment.
        - As Dr. Luthra had pointed out in her Motion to Dismiss, the government had brought this charge against her even though her alleged illegal conduct (not speaking to other doctors in the evenings at restaurants but instead speaking only to the Warner Chilcott sales representative in her office, while receiving bagels and coffee), was <u>all that she was permitted to do under Massachusetts health care law</u> at the time.

2

- In the face of Dr. Luthra's Motion to Dismiss, the Superseding Indictment also abandoned part of Count 3 (the Obstruction of a Criminal Investigation of a Health Care Offense) charge pursuant to 18 U.S.C. § 1518, as Dr. Luthra's Motion to Dismiss had made it clear that the alleged obstructed "health care offense" <u>was not in fact a "health care offense"</u> under the defining statute, 18 U.S.C. § 28.
- The Superseding Indictment then substituted a witness tampering charge for the same alleged conduct, using a different statute, 18 U.S.C. § 1512(b)(3), with different legal elements.
- The Superseding Indictment also added Forfeiture Allegations under 18 U.S.C. §§ 981(a)(1)(C), 9822(a)(7), and 28 U.S.C. §2461(c), <u>even though none of the remaining charges alleged any illegal gain by Dr. Luthra, any loss by the government, or any loss by any other entity or individual</u>.

## **ARGUMENT**

### I. THE INJURY TO DR. LUTHRA IF SHE IS UNABLE TO INSPECT THE GOVERNMENT'S LEGAL INSTRUCTIONS TO THE GRAND JURY

The issue before the Court is integrity. In this case, at issue is the integrity of the legal instructions given to the two grand juries.

The original grand jury indicted on two counts that had absolutely no basis in law. With respect to Count 1 of the Original Indictment, the illegal conduct that Dr. Luthra was alleged to have committed was actually <u>all that she could do under Massachusetts law</u>. And upon the filing of Dr. Luthra's Motion to Dismiss, the government did not even <u>attempt</u> to defend that count.

Therefore, the question arises – what did the government tell the grand jurors about the legal basis for Count 1 in the Original Indictment? The legal instruction <u>must</u> have been incorrect. It is especially important to remember that the prosecutors who brought this charge had operated for <u>years</u> within a <u>specialized</u> unit – the <u>Health Care Fraud</u> unit. Yet they brought a bogus charge against Dr. Luthra that they instantly abandoned when confronted with her Motion to Dismiss. And although the government has not yet, for some reason, moved to dismiss its original indictment, it is clear that it has abandoned Count 1 of the Original Indictment.

Of course, it is natural to then ask – if Count 1 of the Original Indictment is (seemingly)

3

gone, why all the fuss about what the grand jurors were told about it?  In part, the answer goes to Dr. Luthra's anticipated Motion to Dismiss for Vindictive Prosecution, as the original legal instructions will be powerful evidence that the grand jurors were almost certainly given false or incorrect legal instructions regarding the AKS – by seasoned members of the government's Health Care Fraud unit.  The tone and tenor of the instructions given to the grand jury that returned the Superseding Indictment is likewise relevant to the issue of the continuing vindictive prosecution of Dr. Luthra.

      The same holds true for the government's abandonment of part of Count 3 of the Original Indictment (which, like the original Count 1, also appears to continue a sort of zombie-like existence).  Dr. Luthra urges the Court, in considering this motion to discover the legal instructions given to both grand juries, to think long and hard about how – incredibly – in the Original Indictment, the government's Health Care Fraud unit indicted Dr. Luthra for something that fell outside the definition of a health care investigation under 18 U.S.C. § 28.  It is akin to drug prosecutors indicting an individual for the distribution of a drug not included in the schedule of narcotics requiring distribution only via a prescription by a physician.  It is akin to experienced firearms prosecutors indicting an individual for the illegal possession of a weapon that it is not illegal to possess.  Doing what the experienced, specialized prosecutors in this case did, presenting a charge that plainly was had no basis in law, is ample evidence of illegal animus against Dr. Luthra.  What could the prosecutors <u>possibly</u> have told the grand jurors about the obstruction count?  They would have <u>had</u> to have told the grand jurors that the allegedly obstructed conduct involved a "health care investigation," even though that would have been false.

With respect to the Superseding Indictment, the government added <u>new</u> forfeiture provisions – even though none of the counts in the Superseding Indictment allege that Dr. Luthra illegally profited in any way, that the government lost any money because of Dr. Luthra's alleged actions, or that any individual or business lost money because of Dr. Luthra's alleged actions.  The inclusion of these forfeiture allegations, by itself, calls into question the integrity of whatever legal instructions the government provided to the grand jury that returned the Superseding Indictment.

Because of the government's egregious errors with respect to these two counts in the Original Indictment, the Original Indictment can in no way be considered even "facially valid." The two abandoned charges, brought contrary to law, prevent that.  This, coupled with the clear errors regarding the bogus forfeiture allegations in the Superseding Indictment, mandate disclosure of both sets of legal instructions to the two grand juries.

The potential defects in the Government's legal instructions go to the very heart of this case and will likely warrant dismissal of some or potentially all of the charges in the Indictment. Thus, the legal instructions should be disclosed in order to assess the extent of the defects.

Behavior such as this by the government shakes the confidence of all citizens in the integrity of the charging process, both with respect to the Original Indictment and the Superseding Indictment, and is particularly pernicious with respect to Dr. Luthra's planned motion for dismissal of all charges on the grounds of vindictive prosecution.

## II. THE GRAND JURY
### A. Role of the Grand Jury

The grand jury is a check against unfounded prosecution—a bulwark between the accuser and the accused.  *See Wood v. Georgia*, 370 U.S. 375, 390 (1962); *United States v. Williams*, 504 U.S. 36, 47 (1992) (describing the grand jury as a "buffer or referee between the Government

and the people"). "[T]he Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury'" in order to "protect[ ] citizens against arbitrary and oppressive governmental action." *United States v. Calandra*, 414 U.S. 338, 343 (1974); *see also Williams*, 504 U.S. at 51 (recognizing a defendant's constitutional right to "an independent and informed grand jury") (quotation omitted). Thus, the grand jury's function is not only to determine whether probable cause exists to charge an offense; it is also to protect from prosecution those for whom criminal charges are unfounded. *See Calandra*, 414 U.S. at 343.

**B. Legal Instructions to the Grand Jury**

Although constitutionally independent, the "modern grand jury" relies extensively on the prosecution in discharging its duties. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430 (1983); *see also United States v. Singer*, 660 F.2d 1295, 1303 (8th Cir. 1981) (noting that the prosecutor often "serves as the 'guiding arm of the grand jury'") (citation omitted). This includes the prosecutor's "advis[ing] the lay jury on the applicable law." *Sells Eng'g*, 463 U.S. at 430; *accord United States v. Boskic*, 545 F.3d 69, 82 n.13 (1st Cir. 2008) (quoting *Sells Eng'g*). "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'" *United States v. Twersky*, No. S2 92 Cr. 1082 (SWK), (S.D.N.Y. June 29, 1994) (citation omitted).

Although the First Circuit has stated that a prosecutor is generally not obligated to provide legal instructions to a grand jury (and may instead simply read the relevant statute), *see United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002), in this case the government has

6

acknowledged in response to Dr. Luthra's request for production that it did in fact provide legal instructions to both of the grand juries, and that it is not going to produce the legal instructions provided to either of them, hence requiring this motion to compel.

**C. Dismissal for Erroneous Legal Instructions**

Because the prosecutor's guidance is the only guidance a grand jury receives, it is critical that the prosecutor's statements of law be fair and correct. An unfair, incorrect, or misleading instruction about the law can constitute error by preventing the grand jury from discharging its function of making an independent determination whether there was probable cause to believe an offense was committed. "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'" *United States v. Twersky,* No. S2 92 Cr. 1082 (SWK), (S.D.N.Y. June 29, 1994) (citation omitted).

Indeed, many courts have ordered dismissal of indictments based, at least in part, on unfair, incorrect, or misleading legal instructions. *See, e.g., United States v. Bowling*, 108 F. Supp. 3d 343, 352-53 (E.D.N.C. 2015) (dismissing multiple counts because of "the government's erroneous legal instruction to the grand jury"); *United States v. Stevens*, 771 F. Supp. 2d 556, 567-68 (D. Md. 2011) (dismissing indictment where the prosecutor gave erroneous advice to the grand jury); *United States v. Cerullo*, No. 05-cr-1190 (S.D. Cal. Aug. 28, 2007) (dismissing indictment where the prosecutor's failure to accurately and fairly explain an important legal issue "misled the grand jury" and "prejudiced the Defendant"); *United States v. Breslin*, 916 F. Supp. 438 (E.D. Pa. 1996) (dismissing the indictment on several grounds, but labeling "most disturbing" the prosecutor's erroneous legal instructions to the grand jury); *United States v. Peralta*, 763 F. Supp. 14, 19-21 (S.D.N.Y. 1991) (dismissing the indictment where there was

"grave doubt that the decision to indict was free from the substantial influence" of the prosecutor's "misleading statements of the law"); *United States v. Vetere,* 663 F. Supp. 381, 386-87 (S.D.N.Y 1987) (dismissing indictment, <u>even after a guilty verdict at trial</u>, on the grounds that the independent role of the grand jury was impaired based on the prosecutor's misleading "presentation both with respect to the facts and the law").

**D. Nothing Prevents Disclosure of Legal Instructions to the Grand Jury**

Although the secrecy of grand jury proceedings is protected by Federal Rule of Criminal Procedure 6(e), this rule only applies to the substance of jury deliberations, and does not apply to grand jury charges and instructions. No showing of particularized need is necessary for access to these other materials. *See, e.g., United States v. Alter*, 482 F.2d 1016, 1028 n.20 (9th Cir. 1973) (finding the defendant "was entitled to know the content of the court's charges to the grand jury. The proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not"). *Accord, United States v. Way*, 1:14-CR-00101-DAD-BAM (E.D. Cal. Dec. 15, 2015); *United States v. Belton*, No. 14-cr-30-JST (N.D. Cal. Apr. 21, 2015) (holding that grand jury instructions may be disclosed without a particularized showing of need because "instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect"); *United States v. Fuentes*, No. CRS-07-0248 WBS (E.D. Cal. June 24, 2008) (same); *United States v. Diaz,* 236 F.R.D. 470, 477-78 (N.D. Cal. 2006) (holding that the disclosure of all instructions to the grand jury "would not reveal the substance or essence of the grand jury proceedings" and "poses no security threat to past, current or prospective jurors"), *In re Grand Jury Proceedings*, 813 F. Supp. 1451, 1470 (D. Colo. 1993) (releasing written instructions given to the grand jury upon empanelment).

Indeed, it is hornbook law that grand jury secrecy "does not govern matters such as the court's charge to a grand jury . . . ." Susan Brenner & Lori Shaw, Federal Grand Jury: A Guide to Law and Practice § 16.11 (2010). "The legal instructions given to the grand jury regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings. The instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect." *Belton*, (N.D. Cal. Apr. 21, 2015); *see also In re Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002) (Posner. J.) ("[M]inisterial grand jury records, such as records reflecting the empaneling and extension of the grand jury, are not within the reach of Rule 6(e) because they reveal nothing of substance about the grand jury's investigation") (quoting 1 Sara Sun Beale et al., Grand Jury Law and Practice § 5:6 (2d ed. 2001)).

**F. Disclosure of Legal Instructions Is Also Justified Under Rule 6**

Even if Rule 6(e) applied to legal instructions to the grand jury, an exception would permit disclosure here. For disclosure under Rule 6, a defendant must show a "particularized need" for the requested material in that (a) the material sought "is needed to avoid a possible misjustice," (b) "the need for disclosure outweighs the need for continued secrecy," and (c) "the request is structured to cover only what is needed." *Id.,* (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979) (other citation omitted). Dr. Luthra's request for disclosure solidly satisfies each of the requirements.

1. **Avoiding a Possible Misjustice**

First, because of the behavior of the government set out above in the Facts section and Section I of the Argument section, Dr. Luthra needs the instructions in order to avoid being prosecuted vindictively.

9

## 2. The Need for Disclosure Outweighs the Need for Secrecy

Second, the dangers typically associated with disclosure of grand jury proceedings do not apply here – in any respect. First, and most importantly, the government has already produced transcripts of the unredacted testimony of numerous witnesses before the grand jury, along with copies of the exhibits those witnesses referred to during their testimony. Additionally, none of the dangers typically associated with the disclosure of grand jury testimony apply here. The traditional reasons include: (1) preventing the escape of persons being investigated; (2) ensuring freedom of deliberation among grand jurors; (3) preventing perjury or witness tampering; (4) encouraging disclosure of potential crimes by persons with information; and (5) protecting innocent persons exonerated by the grand jury. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-82 n.6 (1958) (citation omitted). With respect to the disclosure of the legal instructions given to the two grand juries, **none** of these factors are present here.

Even if legal instructions may somehow possibly implicate the dangers set out by the Supreme Court in *Procter & Gamble*, this Court "has discretion pursuant to Fed. R. Crim. P. 6(e)(3)(E) to pierce the secrecy of the grand jury and authorize the disclosure of grand jury matter 'at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.'" *United States v. George*, 839 F. Supp. 2d 430, 437 (D. Mass. 2012). "A Court called upon to determine whether grand jury transcripts should be released has substantial discretion" in ordering disclosure so that a defendant may pursue a motion to dismiss. *United States v. Rodriguez-Torres*, 570 F. Supp. 2d 237, 241 (D.P.R. 2008) (citing *Douglas Oil*). In any event, should it somehow be necessary, any materials produced could be produced subject to a protective order issued by the Court.

### 3. The Request is Structured to Cover Only What is Needed

Finally, Dr. Luthra's request is very narrowly structured: she seeks only the legal instructions given to each grand jury, including any records of colloquies between the grand juries and the prosecutors regarding those legal instructions.

## G. The *United States v. Facteau* Case

In a recent case in the District of Massachusetts, the Hon. Allison D. Borroughs considered the matter at issue here, albeit with respect to a case that was in a different procedural posture. With respect to Judge Borroughs' holding regarding the production of grand jury instructions, her opinion is worth quoting at some length:

> In the instant case, [] the Defendants only sought access to or review of the legal instructions that the prosecutors provided to the grand jurors prior to asking them to return an indictment. Legal instructions provided by prosecutors do not implicate any of the concerns typically cited in support of grand jury secrecy. Although it is clear that disclosure of grand jury materials is disfavored, "[i]t is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." [*Douglas Oil*] at 223. Further, the Supreme Court has emphasized "that a court called upon to determine whether grand jury transcripts should be released necessarily is infused with substantial discretion." *Id.*
>
> …
>
> … [T]he Court sees no reason why the prosecutors' instructions to the grand jury should be kept secret. What a prosecutor says to the grand jurors before asking them to return an indictment does not compromise the interests sought to be protected by grand jury secrecy. Further, allowing the instructions to be disclosed through the discovery process would help ensure the integrity of the grand jury process, incentivize prosecutors to be careful in instructing a grand jury, and give some teeth to the grand jury's "shield" function. *See United States v. Mandujano*, 425 U.S. 564, 573 (1976). It would also alert defense counsel to the possibility of an irregularity that could warrant a review of the grand jury process in a particular case. Given the length of time that it takes a case to get to trial, the stigma and harm done to a defendant simply by virtue of being indicted, even if later acquitted, and the largely unfettered power of the grand jury, the small step of allowing a defendant some visibility into the legal instructions given to the grand

11

jury would help protect the defendant's rights, while fully maintaining the secrecy that is so fundamental to the functioning of our grand jury system.

*United States v. Facteau*, No. 1:15-cr-10076 (D. Mass. Aug. 22, 2016) – ADB.  Such sound and solid reasoning should apply and prevail in this case.

### H. The Alternative of Initial *In Camera* Review

Alternatively, as a way to protect against inadvertent disclosure of secret materials, the Court may, as a preliminary step, review the transcripts of the legal instructions given to the two grand juries to ensure that no improper materials will be disclosed.  *See, e.g., United States v. Bravo-Fernandez*, Criminal No. 10-232 (FAB) (D.P.R. Mar. 7, 2017); *United States v. Stevens*, 771 F. Supp. 2d 556, 567-68 (D. Md. 2011) (dismissing indictment after the court conducted an *in camera* review of the legal instructions given to the grand jury and then ordered that the transcript be produced to the defendant, ultimately resulting in the dismissal of the indictment).

### CONCLUSION

For the foregoing reasons, Dr. Luthra asks that the Court compel the government to disclose the requested materials.

Respectfully submitted,<br>
RITA LUTHRA, M.D.<br>
By her attorney,<br>
<br>
/s/ **Stephen E. Spelman**<br>
Stephen E. Spelman (BBO #632089)<br>
12 Wellington Drive<br>
East Longmeadow, Mass.  01028<br>
(413) 530-4316<br>
s.e.spelman@gmail.com

Dated:  September 15, 2017

## **CERTIFICATION PURSUANT TO LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(a)(2) I certify that I conferred with counsel for the government and attempted to resolve the issues that are the subject of this filing. Because of the issues raised only by the filing of the Superseding Indictment, I could not have previously filed this Motion.

/s/ Stephen E. Spelman

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF), on this 15th day of September, 2017.

/s/ Stephen E. Spelman