UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-cr-30032-MGM |
| | ) |
| RITA LUTHRA, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO
COMPEL DISCOVERY OF GRAND JURY INSTRUCTIONS
(Dkt. No. 98)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

On August 1, 2017, Defendant Rita Luthra, M.D., was charged in a three count superseding indictment with aiding and abetting the wrongful disclosure of individually identifiable health information, in violation of 42 U.S.C. § 1320d-6(a) and 18 U.S.C. § 2 (Count One), tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3) (Count Two), and obstructing a criminal investigation of a health care offense, in violation of 18 U.S.C. § 1518 (Count Three) (Dkt. No. 89). Currently pending before the court is Defendant's motion to compel the government to provide the instructions on the law that were delivered to the grand jury that handed down the original indictment and the grand jury that returned the superseding indictment (Dkt. No. 98). Defendant contends that she is entitled to this information to develop her claim of vindictive prosecution. The government opposes Defendant's motion (Dkt. No. 104).

After consideration of the pleadings and after argument on October 20, 2017, Defendant's motion to compel discovery of the instructions that were delivered to the grand juries is DENIED for the reasons detailed below.

II. BACKGROUND

A. Facts Alleged in the Superseding Indictment

Defendant was a gynecologist at the Women's Health and Education Center in Springfield, Massachusetts (Dkt. No. 89 ¶ 1). The charges arose in the aftermath of her involvement with a Sales Representative ("Sales Rep. # 1") of Warner Chilcott, a pharmaceutical company that distributes and sells Actonel and Atelvia, which are included in a class of drugs known as bisphosphonates that are prescribed to prevent and treat osteoporosis (*id.* ¶¶ 2, 4, 5).

Because Defendant was a "high volume prescriber of bisphosphonates in western Massachusetts," in October 2010, Sales Rep. # 1 asked Defendant to participate in Warner Chilcott's speaker program (*id.* ¶ 5). Defendant allegedly agreed to become a speaker at medical education ("med. ed.") events in her office (*id.*). The government alleges that these med. ed. events involved Defendant speaking to Sales Rep. # 1 for about thirty minutes while Defendant ate food that Sales Rep. # 1 provided to Defendant and her office staff (*id.* ¶ 6). Between October 2010 and November 2011, Defendant allegedly received a total of $23,500 from Warner Chilcott for speaker training and for speaking at approximately thirty-one med. ed. events (*id.*). The government alleges that Sales Rep. # 1 provided food to Defendant's office and paid Defendant speaker's fees to induce Defendant to write more prescriptions for Warner Chilcott's products (*id.*).

Insurers "typically identified the drugs that they paid for on behalf of their members [so-called 'covered drugs'] in a list called a formulary" (*id.* ¶ 9). If a drug was not covered on

2

formulary, many insurers required a prior authorization ("PA") from a physician, explaining the medical necessity for the drug, before the insurer would pay for it (*id.* ¶ 10).

In January 2011, Warner Chilcott launched Atelvia as a replacement for Actonel (*id.* ¶ 13). Because a less expensive, generic bisphosphonate was available, the majority of insurance plans did not include Warner Chilcott's Atelvia on their formularies and insurers required a PA to cover it (*id.*). Defendant began receiving "numerous" denials from insurance companies for the Atelvia prescriptions that she wrote (*id.* at ¶ 14). Due to the high volume of denials, Defendant allegedly asked Sales Rep. # 1 to assist one of Defendant's medical assistants in completing PAs to obtain insurance coverage for Atelvia (*id.*). The government alleges that Sales Rep. # 1 was given access to Defendant's patients' medical records to complete this task (*id.*). Defendant purportedly signed the PAs that Sales Rep. # 1 prepared (*id.*). Because Defendant's patients' records contained "individually identifiable health information" or "protected health information" as defined by the Health Insurance Portability and Accountability Act (HIPPA), the Act and the regulations permitted only the patient, the physician and her staff, and the insurance company to be involved in the PA process (*id.* ¶¶ 7, 14). The government alleges that Defendant violated 42 U.S.C. § 1320d-6 and 18 U.S.C. § 2 by disclosing patients' confidential health information to Sales Rep. # 1 (*id.* ¶ 12).

On February 10, 2014, Special Agents from the Office of the Inspector General of the United States Department of Health and Human Services ("HHS") questioned Defendant about her relationship with Warner Chilcott and Sales Rep. # 1 (*id.* ¶ 17). Defendant allegedly told the HHS agents that Sales Rep. # 1 assisted with the preparation of PAs, but did not have access to patients' confidential medical information (*id.* ¶ 17). The government alleges that after Defendant's interview, she directed her medical assistant, who Sales Rep. # 1 had assisted in

preparing the PAs, to tell the HHS agents that Sales Rep. # 1 did not have access to patients' records (*id.*). Defendant purportedly repeated this instruction to the medical assistant the next day and said that "there is a HIPPA law and there would be hefty fines for them both" if the investigators learned that they shared medical records with an unauthorized person (*id.*). Defendant's statements to the medical assistant form the basis of the witness tampering charge (*id.*).

The government further alleges that, during the February 10, 2014 interview, Defendant also told the HHS investigators that Warner Chilcott paid her to review and opine on clinical research (*id.* ¶ 20). However, when the HHS investigators interviewed Defendant again about a month later on March 7, 2014, she allegedly told them that Warner Chilcott paid her $3,250 in 2010 for speaker training and $19,500 in 2011 for reading abstracts of clinical trials and writing a 5,000 word research paper, which she shared with Warner Chilcott and the World Health Organization (*id.* ¶ 21). The government alleges that Defendant obstructed its investigation of a health care offense by knowingly making false representations to the investigators (*id.* ¶¶ 19, 21).

B.      Procedural History

On October 21, 2015, a grand jury returned a three-count indictment ("original indictment") against Defendant, charging her with violating the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b)(1)(B) (Count One); wrongfully disclosing individually identifiable health information, in violation of 42 U.S.C. § 1320d-6 (Count Two); and obstructing a criminal investigation of a health care offense, in violation of 18 U.S.C. § 1518 (Count Three) (Dkt. No. 3). On October 12, 2016, the undersigned denied Defendant's motion to compel discovery that she contended would support her claim of selective and vindictive prosecution (Dkt. No. 37, 53). *See United States v. Luthra*, Case No. 15-cr-30032-MGM, 2016 WL 5946864, at *8 (D. Mass.

Oct. 12, 2016). On July 7, 2017, Defendant moved to dismiss the indictment (Dkt. No. 87). On August 1, 2017, before the court ruled on Defendant's motion to dismiss, a second grand jury returned the superseding indictment (Dkt. No. 89). Because the charges in Counts One and Three of the superseding indictment also appeared in the original indictment, the presiding judge considered so much of Defendant's motion to dismiss as it related to those counts and denied it on September 26, 2017 (Dkt. No. 100). The judge rejected Defendant's contentions that Counts One and Three of the superseding indictment should be dismissed because they lacked specificity and were duplicative, and that Count Three should be dismissed on the ground that it failed to state an offense and failed to meet the pleading requirements articulated in *United States v. Aguilar*, 515 U.S. 593 (1995) (*id.*). Defendant now asks the court to compel the government to produce the legal instructions that it delivered to the two grand juries.

III. ANALYSIS

A. The Original Indictment

In essence, Defendant's motion to compel challenges the factual basis supporting the original grand jury's indictment for violating the AKS (Count One) and the legal basis supporting the indictment for obstructing a criminal investigation of a health care offense (Count Three). As grounds for her motion, Defendant alleges that because the original grand jury indicted her for violating the AKS and the second grand jury did not, and because the original grand jury indicted her for obstructing a criminal investigation of a health care offense and the second grand jury indicted her both for this offense and for witness tampering, the government failed to present the original grand jury with a sufficient factual or legal basis to indict her for the crimes alleged in Counts One and Three and, therefore, the prosecution was vindictive. According to Defendant, the government's presentation of flawed legal instructions to the original grand jury is the only

5

explanation for the return of the charges that lacked a factual or legal basis. Defendant further posits that she is entitled to discover the allegedly erroneous instructions to support a motion for dismissal based on vindictive prosecution that she intends to file. Defendant's arguments, however, are based on faulty reasoning and speculation.

Rule 6(e)(2)(B) of the Federal Rules of Criminal Procedure reflects the Supreme Court's recognition "that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). *See United States v. McMahon*, 938 F.2d 1501, 1504 (1st Cir. 1991) ("The Supreme Court repeatedly has recognized the importance of secrecy in grand jury proceedings, even after, as in this case, the grand jury has concluded its function."). Although disclosure of "matters occurring before the grand jury" is restricted by Fed. R. Civ. P. 6(e)(2)(B), rule 6(e)(3) provides exceptions to the rule precluding disclosure. *See* Fed. R. Crim. P. 6(e)(3). Under the rule, a court is permitted to authorize disclosure of grand jury material upon a defendant's showing "that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). A defendant must make a "strong showing of a particularized need" to obtain the grand jury material. *United States v. Sells Eng'g., Inc.*, 463 U.S. 418, 443 (1983). *See also United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 (1958) (the "'indispensable secrecy of grand jury proceedings' . . . must not be broken except where there is a compelling necessity.") (quoting *United States v. Johnson*, 319 U.S. 503, 513 (1943)). In order to meet this substantial burden, a defendant is required to demonstrate "that 1) the material sought is needed to avoid a possible injustice in another judicial proceeding, 2) the need for disclosure outweighs the need for continued secrecy and 3) the request is structured to cover only what is needed." *United States v. George*, 839 F. Supp. 2d 430, 437 (D. Mass. 2012),

*aff'd,* 761 F.3d 42 (1st Cir. 2014).[1] *See Douglas Oil Co.*, 441 U.S. at 222. "Rule 6(e) 'is not an invitation to engage in a fishing expedition to search for grand jury wrongdoing and abuse when there are no grounds to believe that any wrongdoing or abuse occurred.'" *United States v. Rodriguez-Torres*, 570 F. Supp. 2d 237, 242 (D.P.R. 2008) (quoting *United States v. Loc Tien Nguyen*, 314 F. Supp. 2d 612, 616 (E.D. Va. 2004)). "Courts should refuse to disclose grand jury materials, and reject an invitation to conduct an *in camera* review of matters occurring before the grand jury 'unless there [is] a very clear and positive showing of a need for the [grand jury material].'" *Bravo-Fernández*, 239 F. Supp. 3d at 415 (quoting *United States v. Perez–Velazquez*, 488 F. Supp. 2d 82, 109 (D.P.R. 2007) (second alteration in original)). Defendant's "burden cannot be satisfied with conclusory or speculative allegations of misconduct." *Rodriguez-Torres*, 570 F. Supp. 2d at 242.

By making the speculative allegation that the government delivered faulty legal instructions in order to obtain the indictment for the AKS violation, Defendant fails to satisfy her burden of demonstrating a particularized need to compel the government to produce the transcripts of the grand jury's legal charge. Defendant's contention that the government failed to present sufficient evidence to establish probable cause to believe she violated the AKS ignores

---

[1] Defendant's assertion -- that this standard "only applies [to disclosure] of the substance of jury deliberations and does not apply to grand jury charges and instructions" – is not supported by the law of the First Circuit (Dkt. No. 99 at 8). "The weight of pertinent authority, including First Circuit precedent, holds that grand jury instructions are secret." *United States v. Bravo-Fernández*, 239 F. Supp. 3d 411, 415 n.5 (D.P.R. 2017) (citing *United States v. Lopez–Lopez*, 282 F.3d 1, 9 & n.1 (1st Cir. 2002) (affirming district court's denial of defendant's motion to review grand jury instructions, which are protected grand jury materials)). Similarly, Defendant's reliance on Judge Burroughs's dicta in *United States v. Facteau*, 1:15-cr-10076-ADB, 2016 WL 4445741, *4-5 (D. Mass. Aug. 22, 2016), is unavailing because Judge Burroughs, citing "prevailing case law," declined to reverse the decision of the Magistrate Judge who denied defendants' motion to compel production of the legal instructions to the grand jury (Dkt. No. 99 at 11-12). *Id.* at *5.

the axiom that "'an indictment "fair upon its face," and returned by a "properly constituted grand jury," . . . conclusively determines the existence of probable cause' to believe the defendant perpetrated the offense alleged." *Kaley v. United States*, 134 S.Ct. 1090, 1097 (2014) (quoting *Gerstein v. Pugh,* 420 U.S. 103, 117 n.19 (1975)). Section 1320a-7b(b)(1)(B) of Title 42 of the United States Code (the AKS) punishes

> whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind . . . in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program . . . .

In support of Count One of the original indictment, the government alleged that Defendant "significantly increased" the number of prescriptions she wrote for Warner Chilcott's bisphosphonate drugs in return for receiving Warner Chilcott's payments of $23,500 for speaking to Sales Rep. # 1 over breakfast or lunch and that Medicare, the Federal health care program, paid for some of Warner Chilcott's drugs that Defendant prescribed (Dkt. No. 3 ¶¶ 4, 9, 12, 13). The government further alleged that the number of Defendant's prescriptions for Warner Chilcott's pharmaceuticals dropped sharply when Sales Rep. # 1 left Warner Chilcott and Defendant stopped receiving payments (*id.* ¶ 13). These allegations were sufficient to establish probable cause to believe Defendant violated the AKS by receiving remuneration for prescribing Warner Chilcott pharmaceuticals for which payments were made by Medicare. *See Kaley*, 134 S.Ct. at 1103 ("Probable cause . . . is not a high bar: It requires only the 'kind of "fair probability" on which "reasonable and prudent [people,] not legal technicians, act."') (quoting *Florida v. Harris,* 568 U.S. 237, 244 (2013)). The government represents that it exercised its discretion and excluded this charge from the superseding indictment because Defendant's counsel "made an impassioned policy-based pitch . . . as to why it should not proceed against"

8

Defendant on this charge (Dkt. No. 104 at 3). *See United States v. Aponte-Garcia*, Criminal No. 15-660 (FAB), 2016 WL 7373882, at *6 n.2 (D.P.R. Dec. 20, 2016) ("prosecutors are afforded [significant leeway] in their charging decisions") (citing *United States v. Goodwin*, 457 U.S. 368, 382 (1982)).[2]

Defendant's claim regarding the charge of obstructing a criminal health care investigation (18 U.S.C. § 1518) is similarly flawed. Section 1518(a) punishes:

> [w]hoever willfully prevents, obstructs, misleads, delays or attempts to prevent, obstruct, mislead, or delay the communication of information or records relating to a violation of a Federal health care offense to a criminal investigator . . . .

Defendant contends that the original grand jury lacked a legal basis to indict her for violating § 1518 based on the allegation that she directed her medical assistant to lie to the HHS investigators about Sales Rep. # 1's access to patients' confidential records in violation of HIPPA (Dkt. No. 99 at 3-4). Defendant supports her argument with the fact that this allegation formed the basis of the superseding indictment's witness tampering charge under 18 U.S.C. § 1512(b)(3) (Count Two). The superseding indictment's separate charge for violating 18 U.S.C. § 1518 (Count Three) was based on Defendant's alleged lies to the HHS investigator about the services

---

[2] The government persuasively disputes Defendant's argument that her conduct "was all that she was permitted to do under Massachusetts health care law at the time" (Dkt. No. 99 at 2; Dkt. No. 104 at 3 n.5). Defendant's statement appears to be a reference to Massachusetts' Marketing Code of Conduct, which regulates and punishes specific activities of pharmaceutical and medical device manufacturing companies. *See* Mass. Gen. Laws ch. 111N, § 3. Although the law permitted pharmaceutical companies to provide meals to physicians in their offices, they were not permitted to provide meals to "a healthcare practitioner's spouse or other guest." Mass. Gen. Laws ch. 111N, § 2(1)(c), (d). The original indictment alleged that Warner Chilcott paid for a "barbeque that [Defendant] hosted for her friends at home" (Dkt. No. 3 ¶ 12). The Massachusetts law also prohibited "payments in cash or cash equivalents to healthcare practitioners either directly or indirectly, except as compensation for bona fide services." Mass. Gen. Laws ch. 111N, § 2(7). The government alleged that Defendant was paid to speak to Sales Rep. # 1 while Defendant ate breakfast or lunch and that these payments constituted inducements to write prescriptions for Warner Chilcott products, not for bona fide services Defendant provided (Dkt. No. 3 ¶¶ 12, 13).

she performed for Warner Chilcott for which she was compensated. It appears that Defendant challenges the legality of including witness tampering in Count Three of the original indictment on the ground that a HIPPA violation is not included in the definition of a "Federal health care offense" for purposes of 18 U.S.C. § 1518. *See* 18 U.S.C. § 24 (defining "Federal health care offense"). According to Defendant, because witness tampering connected to a HIPPA violation was not properly charged under § 1518, the government must have delivered erroneous legal instructions to the original grand jury in order to obtain the indictment and she is entitled to discovery of the instructions.

The government counters that the single count of obstruction in the original indictment was proper, but the allegations were divided into two counts in the superseding indictment "in order to present the cleanest possible case to the [trial] jury" (Dkt. No. 104 at 5). According to the government, it was investigating Warner Chilcott for violating 42 U.S.C. § 1320a-7b, the AKS, and for violating 18 U.S.C. § 1347, the health care fraud statute, which criminalizes the submission of fraudulent PA forms in order to receive payment from a "health care benefit program" (*id.*).[3] 18 U.S.C. § 1347. Because HHS was investigating Warner Chilcott's submission of fraudulent PA forms to insurers when Defendant allegedly directed her medical assistant to lie to the HHS investigators about Sales Rep. # 1's access to patients' confidential medical records and involvement in preparing PA forms, her conduct provided a legal ground for

---

[3] Section 1320a-7b of Title 42 (the AKS) and 18 U.S.C. § 1347 (the health care fraud statute) are included in the definition of a "federal health care offense." 18 U.S.C. § 24.

charging her with violating 18 U.S.C. § 1518.[4]  In the court's view, the government's argument carries the day.

Even assuming some flaw in the legal instructions delivered to the original grand jury, Defendant's argument fails because she does not challenge the wording of the original indictment that contains an adequate description of the elements of the crimes alleged in Counts One and Three.  *See George*, 839 F. Supp. 2d at 437 (denying defendant's request for production of legal instructions to the grand jury where "the plain words of the . . . charge were sufficient to apprise the [grand] jury of the necessary legal elements . . . .").  Count One charged Defendant with "knowingly and willfully solicit[ing] and receiv[ing] remuneration from Warner Chilcott in the amount of $23,500 in exchange for purchasing and ordering, and arranging for the purchase and order of, prescriptions for Warner Chilcott's osteoporosis drugs, for which payment was made in whole or in part under a Federal health care program, namely Medicare" (Dkt. No. 3 ¶ 9).  Similarly, Count Three of the original indictment alleged that Defendant:  "willfully prevented, obstructed, misled, and delayed, and attempted to prevent, obstruct, mislead, and delay the communication of information and records relating to a violation of a Federal health care offense to a federal investigator," specifically, she gave information that she knew to be false to HHS agents who were investigating health care offenses, and "directed [her] Medical Assistant . . . to do the same" (Dkt. No. 3 at ¶ 21).  Because these portions of the original indictment correctly stated the elements of violations of the AKS (Count One) and 18 U.S.C. § 1518 (Count Three) and because, as discussed earlier, the government presented sufficient grounds to indict Defendant for both offenses, there was no defect in the grand jury proceedings.  "There is thus no

---

[4] For purposes of this motion, Defendant does not challenge the sufficiency of the evidence on so much of Count Three of the original indictment as alleged that she violated § 1518 by lying to the HHS investigators about the services she performed for Warner Chilcott.

basis for [Defendant's] speculation of impropriety and no looming potential for injustice." *George*, 839 F. Supp. 2d at 437-38.

Accordingly, Defendant fails to meet her burden to establish that there are "particularized and factually based grounds" supporting her contention that irregularities in the legal instructions delivered to the original grand jury might warrant dismissal of the indictment. *Rodriguez-Torres*, 570 F. Supp. 2d at 242. *Compare United States v. Morad*, Criminal Action No. 13-101, 2014 WL 68704, at *2 (E.D. La. Jan. 8, 2014) ("[The Defendant's] bald assertion that the United States failed to properly instruct the grand jury on this subject is insufficient to overcome the presumption of regularity that attaches to grand jury proceedings."); *United States v. Singhal*, 876 F. Supp. 2d 82, 99 (D.D.C. 2012) ("Defendants are unable to identify any portion of the Indictment that suggests that any charge to the grand jury was legally erroneous, and resorts to speculation about what the grand jury was instructed based on what is *not* stated in the Indictment."); *George*, 839 F. Supp. 2d at 437-38 (denying defendant's request for grand jury instructions, which was based on defendant's speculation that the instructions were improper); *Rodriguez-Torres*, 570 F. Supp. 2d at 245 ("Defendants' conclusory and speculative argument of prosecutorial misconduct is not sufficient to overcome the grand jury's secrecy and the presumption of regularity that accompanies it. Therefore, the evidence presented by [d]efendants is not a sufficient showing of a particularized need.").

B. The Superseding Indictment

In her reply brief, Defendant objects to the government's presentation to the second grand jury of evidence that Warner Chilcott violated the AKS by paying her for participating as a speaker in the med. ed. programs notwithstanding the absence of a charge that Defendant violated that statute (Dkt. No. 107). Defendant alleges that presentation of this evidence, which

was akin to uncharged misconduct, constitutes proof of prosecutorial vindictiveness, and she is entitled to discovery of the legal instructions that were delivered to the grand jury to support a motion for dismissal on this basis (*id.*). The court is not persuaded by Defendant's argument.

"A vindictive prosecution – one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right – violates a defendant's Fifth Amendment right to due process." *United States v. Jenkins*, 537 F.3d 1, 3 (1st Cir. 2008) (citing *Goodwin*, 457 U.S. at 372). "A defendant may establish a vindictive prosecution either (1) by producing evidence of actual vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness." *Jenkins*, 537 F.3d at 3 (citing *United States v. Marrapese*, 826 F.2d 145, 147 (1st Cir. 1987)). "If a defendant raises a presumption of vindictiveness, the prosecutor may rebut the presumption by showing objective reasons for its charges." *Id.* "It is difficult to make . . . a showing [that raises a presumption of vindictiveness] pretrial, however, in light of the broad discretion afforded the prosecutor to determine who should be prosecuted and for what crime, and the presumption that the prosecutor has exercised that discretion in good faith." *United States v. Bucci*, 582 F.3d 108, 112 (1st Cir. 2009) (citing *Goodwin*, 457 U.S. at 377). *See also Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978). "[C]ourts should go very slowly in embracing presumptions of prosecutorial vindictiveness in pretrial proceedings." *United States v. Stokes*, 124 F.3d 39, 45 (1st Cir. 1997).

Because the government had a valid reason for presenting evidence to the second grand jury regarding Warner Chilcott's payments to Defendant for participating as a speaker, she fails to raise a sufficient prospect of prosecutorial vindictiveness to warrant discovery of the confidential grand jury instructions. The allegations about Warner Chilcott's payments to Defendant were relevant to Counts Two and Three of the superseding indictment. Count Two

charges Defendant with witness tampering, in violation of 18 U.S.C. § 1512(b)(3), by directing her medical assistant to lie to a HHS special agent who was investigating Warner Chilcott (Dkt. No. 89 ¶ 17). Count Three charges Defendant with violating 18 U.S.C. § 1518 by obstructing a criminal investigation of a health care offense, including potential violations of the AKS, by lying to an HHS agent on two occasions when she was interviewed about her relationship with Warner Chilcott (*id.* ¶¶ 19-21). To put the interviews in context, the government was required to present testimony to the grand jury regarding HHS's investigation into Warner Chilcott's payments to Defendant and other health care providers. The HHS agents interviewed Defendant and her medical assistant as part of this investigation. Therefore, the evidence regarding Warner Chilcott's acts explained the reason for the interviews and was inextricably intertwined with the crimes alleged in Counts Two and Three. Accordingly, Defendant has not sustained her burden of establishing a compelling need for the government to provide the legal instructions that it delivered to the second grand jury.[5]

IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Discovery of Grand Jury Instructions (Dkt. No. 98) is DENIED.

It is so ordered.

Dated: January 3, 2018

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

---

[5] Defendant's undeveloped assertion that she is entitled to discover the legal instructions based on the alleged lack of an evidentiary foundation for the forfeiture allegations in the superseding indictment suffers from the same failure to show a particularized need for disclosure as her other claims (Dkt. No. 99 at 5). *See Rodriguez-Torres*, 570 F. Supp. 2d at 242. That aspect of the superseding indictment only provides Defendant with notice that "upon conviction" of the witness tampering or obstruction charges, "any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense[s]" is subject to forfeiture (Dkt. No. 89 at ¶¶ 22-25). *See* Fed. R. Crim. P. 32.2(a).