IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> vs. <br><br> RITA LUTHRA <br><br> Defendant. | CRIM. NO. 15-CR-30032-MGM |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT

The Court should deny the defendant's motion to dismiss the superseding indictment. Dkt. No. 135. The defendant's argument that Count One fails to allege that she did anything wrong, and that she (in fact) did not do anything wrong is based on a mistaken reading of the superseding indictment and the law. Similarly, the defendant's allegations that Counts One through Three do not state an offense, are duplicitous, and lack specificity, all fail in the face of a superseding indictment that sufficiently apprises the defendant of the allegations against her. Similarly, there is no basis for the defendant's argument that the superseding indictment be dismissed due to the alleged government's misconduct before the grand jury because the government was entitled to introduce evidence of its investigation into Warner Chilcott, and the defendant's relationship with Warner Chilcott, as context for the allegations in Count Three.[1]

---

[1] The defendant also asked the Court to dismiss the superseding indictment because the delay in bringing the case to trial allegedly violates her Sixth Amendment right to a speedy trial. *See* Defendant's Motion to Dismiss Superseding Indictment at 29-31. This precise issue was recently briefed and is currently pending before the Court. *See* Defendant's Rule 59 Objections to the Magistrate Judge's Ruling on the Motion to Exclude Time, Dkt. No. 128, and the Government's Opposition, Dkt. No. 128. As such, the government is not going to reiterate its opposition to the defendant's argument in this pleading unless the Court so desires.

## FACTUAL BACKGROUND

In the course of an investigation into the sales and marketing practices of Warner Chilcott, a New Jersey-based pharmaceutical company, the government learned that Warner Chilcott paid the defendant as a "speaker" despite the fact that she did not speak to other physicians. *See* Dkt No. 89 (Superseding Indictment ¶¶ 5-6 (hereinafter, "S. Indict. ¶ __")). In addition, the government learned that the defendant allowed a Warner Chilcott sales representative to access her patients' medical files for the purpose of assisting in filling out prior authorization forms that were necessary to ensure that insurance companies paid for Warner Chilcott's drug. S. Indict. ¶ 14.

In or around February 10, 2014, Special Agents from the Department of Health and Human Services interviewed the defendant. S. Indict. ¶ 17. The defendant told the Special Agents that Warner Chilcott paid her to read studies and provide her opinion on the studies. *Id.* The defendant also told the Special Agents that Sales Representative #1 assisted with prior authorizations, but did not have access to patients' protected health information. *Id.* After being interviewed by the Special Agents, the defendant called Medical Assistant #1, reported that the Warner Chilcott sales representative got them in trouble, and directed Medical Assistant #1 to tell the Special Agents that she did not share any medical records. *Id.* The next day, the defendant again ordered Medical Assistant #1 to tell the Special Agents that they did not show any medical records to Sales Representative #1, and told Medical Assistant #1 that there was a HIPAA law and there would be hefty fines for them both if people found out they shared medical records. *Id.*

On March 7, 2014, Special Agents interviewed the defendant a second time. During this interview, the defendant told the Special Agents that Warner Chilcott paid her $3,250 in 2010 for

training to become a speaker and $19,500 in 2011 for a research paper that she wrote on "Osteoporosis Prevention and How to Identify Patients and Achieve Compliance." S. Indict. ¶ 21.

## PROCEDURAL BACKGROUND

On October 21, 2015, a federal grand jury returned an indictment charging the defendant with one count of receiving kickbacks in violation of 42 U.S.C. §1320a-7b (Count One), one count of wrongful disclosure of individually identifiable health information, in violation of 42 U.S.C. § 1320d-6 (Count Two), and one count of obstruction of a criminal health care investigation, in violation of 18 U.S.C. § 1518 (Count Three). *See* Dkt. No. 3.

On July 7, 2017, the defendant filed a motion to dismiss the indictment, arguing that the three counts were duplicitous and did not contain sufficient information to inform her of the nature of the charges against her. *See* Dkt. No. 87. The government opposed this motion, *see* Dkt. No. 91, and the Court denied the defendant's motion to dismiss, *see* Dkt. No. 100.

On August 1, 2017, a grand jury returned a superseding indictment charging the defendant with wrongfully disclosing individually identifiable health information, in violation of 42 U.S.C. § 1320(d)-6(a) (Count One), witness tampering, in violation of 18 U.S.C. § 1512(b)(3) (Count Two), and obstruction of a criminal health care investigation, in violation of 18 U.S.C. § 1518 (Count Three). *See* Dkt. No. 89 (Superseding Indictment).

Despite the fact that the superseding indictment charges a smaller subset of the same conduct as the original indictment, the defendant once again argues that the superseding indictment fails to state an offense, and that the three counts are so duplicitous and vague that she does not know what she is charged with doing and, as such, cannot prepare a defense. The defendant's arguments, in a nutshell, are as follows: Count One fails to state an offense because

it does not allege that she did anything wrong, and she did not; Count Two fails to state an offense because the defendant was lawfully directing Medical Assistant #1 to invoke her Fifth Amendment right against self-incrimination; and Count Three fails to state an offense because it does not allege that the defendant made a false statement to investigators. In addition, the defendant argues that the superseding indictment violates her Sixth Amendment right to a speedy trial, and that the government's conduct before the grand jury mandates dismissal of the indictment. The defendant's arguments are based on a misconception of the superseding indictment and the law. For these reasons, and those set forth in greater detail below, the Court should deny the defendant's motion to dismiss the superseding indictment.

## ARGUMENT

**I. THE SUPERSEDING INDICTMENT SPECIFICALLY ALLEGES THREE DIFFERENT CRIMES AND SUFFICIENTLY APPRISES THE DEFENDANT OF THE CHARGES SHE IS FACING**

Indictments must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). As such, an indictment may track statutory language as long as it also includes the facts and circumstances surrounding the offense. *United States v. Savarese*, 686 F.3d 1, 6 (1st Cir. 2012); *United States v. Cranney*, No. 14-cr-10276-IT, 2016 U.S. Dist. LEXIS 41164, at *14 (D. Mass. Mar. 29, 2016) (quoting *United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010)). "An indictment does not need to contain the level of detail that Defendant requests…It is enough that the indictment contains a 'clear and specific description of the [crime]' which 'need not be pleaded with all the certainty in respect of time, place, and circumstance.'" *Cranney*, No. 14-cr-10276-IT, 2016 U.S. Dist. LEXIS 41164, at *14 (D. Mass. Mar. 29, 2016) (quoting *United States v. Azad*, 809 F.2d 291, 295 (6th Cir. 1986)). The "test for sufficiency [of the indictment] is not whether, in hindsight, the indictment

or information could have been more complete….but whether it fairly identifies and describes the offense." *United States v. Allard*, 864 F.2d. 248, 250 (1st Cir. 1989).

      A.    <u>Count One Alleges that Defendant Allowed Sales Representative #1 to Access her Patients' Medical Records in Violation of HIPAA</u>

Defendant argues that Count One, charging her with wrongfully disclosing individually identifiable health information, "fails to inform [her] of the specific offense or offenses of which she is accused" such that "she is unable to prepare her defense." Dkt. No. 136 (Defendant's Memorandum in Support of Motion to Dismiss, at 15 (hereinafter, "Def. Mot. at __")). Both the factual and statutory bases for the charge are clear from the indictment. The indictment alleges that the defendant "did knowingly and without authorization disclose protected individually identifiable health information relating to an individual, that was maintained by a covered entity, as defined in 45 C.F.R. § 160.103, to another person, to wit: Warner Chilcott Sales Representative #1." S. Indict. ¶ 12. This language closely tracks, and is nearly identical to, the statutory language of 42 U.S.C. § 1320d-6(a)(3). In addition, the indictment alleges the following facts: (1) that the offense took place between January 2011 and November 2011 (s. indict. ¶ 12); (2) that the defendant is a covered entity (s. indict. ¶ 8); (3) that Warner Chilcott launched a drug that was not covered by insurance without a prior authorization (s. indict. ¶ 13); and (4) that the defendant asked Sales Representative #1 to help Medical Assistant #1 fill out prior authorization forms, and, in doing so, gave Sales Representative #1 access to her patients' protected health information (s. indict. ¶ 14).

The defendant argues that Count One does not state an offense because it does fails to allege that she was not allowed to share medical records with a pharmaceutical sales representative (i.e., that she did something she was not supposed to do). However, the superseding indictment makes clear that, "[b]ecause PAs contain sensitive medical information,

5

the PA process was restricted to the patient, the physician (and the physician's staff), and the insurance company." S. Indict. ¶ 10. The superseding indictment then alleges that the defendant asked Sales Representative #1 (not a patient, physician, member of the physician's staff, or insurance company) to assist with the PAs. S. Indict. ¶ 14. The superseding indictment undoubtedly alleges that the defendant shared her patients' protected health information with a pharmaceutical sales representatives, which she was not supposed to.

In any event, even if the Court were to find that the superseding indictment should have more specifically alleged that the defendant shared protected health information when she was not supposed to, the error is harmless because the defendant clearly understands the charges against her. *See United States v. Yefsky,* 994 F.2d 885, 894 (1st Cir.1993) (applying harmless error review where indictment did not give the defendant adequate notice of the charges against him, but where adequate notice had been given prior to trial); s*ee also United States v. Barbato*, 471 2d. 918, 921 (1st Cir. 1973) (citing *United States v. Silverman*, 430 F.2d 106, 111-112 (2d Cir. 1970)) ("Although it is generally the better practice, [the] elements [of an offense] need not always be set forth *in haec verba*. Indictments 'must be read to include facts which are necessarily implied by the specific allegations made.'").

The defendant's next argument – that Count One fails as a matter of law because she is allowed to share her patients' medical records with pharmaceutical companies and their sales representatives – misunderstand HIPAA law and regulations. The defendant argues that she is allowed to share her patients' medical records with pharmaceutical companies and their sales representatives because (1) sharing medical records is necessary for the "treatment" of her patients, (2) pharmaceutical companies are "health care providers," and (3) pharmaceutical

6

companies and their sales representatives are her "business associates." This argument is simply not supported by the HIPAA statute and enacting regulations.

The purpose of the HIPAA statute, among other things, is to limit the circumstances in which patients' protected health information can be used, obtained, or disclosed. While federal regulations allow health care providers and other covered entities to disclose protected patient information in certain instances, the three exceptions cited by the defendant do not apply to the conduct charged in the superseding indictment: allowing Sales Representative #1 to access the defendant's patients' medical files for the purpose of assisting her Medical Assistant in filling out Prior Authorizations.

    1.    *<u>The "Treatment" Exception Does Not Allow a Pharmaceutical Sales Representative to Access Patients' Medical Records for Purposes of Completing Administrative Paperwork</u>*

45 C.F.R. § 164.502(a)(1) provides that a "covered entity is permitted to use or disclose protected health information… (ii) for treatment, payment, or health care operations, as permitted by and in compliance with § 164.506." 45 C.F.R. § 164.506(c)(1) provides that a "covered entity may use or disclose protected health information for its own treatment, payment, or health care operations." 45 C.F.R. § 164.501 defines "treatment," as used in 45 C.F.R. § 164.506(c)(1), as "the provision, coordination, or management of health care and related services by one or more health care providers, including the coordination or management of health care by a health care provider with a third party; consultation between health care providers relating to a patient; or the referral of a patient for health care from one health care provider to another."

In this definition, "treatment" refers to conduct relating to the substantive treatment of a patient – the provision of health case itself, and the coordination and/or management of a

patient's care.  Notably, the interpretation of the treatment provision by the United States Department of Health and Human Services ("HHS") is consistent with this interpretation:  HHS describes "treatment" as "the provision, coordination, or management of health care and related services for an individual by one or more health care providers, including consultation between providers regarding a patient and referral of a patient by one provider to another."[2]

This definition does *not* suggest that "treatment" includes administrative paperwork of the nature that the defendant is alleged to have allowed Sales Representative #1 to perform.  The defendant is not alleged to have sought Sales Representative #1's input on whether to prescribe Warner Chilcott's drug.  Rather, once she did, she is alleged to have allowed Sales Representative #1 to review her patients' medical files for the purpose of completing administrative paperwork relating to the whether an insurance company would pay for Warner Chilcott's drug, or require the patient to pay out of pocket for the drug.

> 2. *Pharmaceutical Companies are not Health Care Providers for the Purposes of the "Health Care Provider" Exception in 45 C.F.R. 164.506(c)(3)*

The defendant also argues that she was entitled to share her patients' medical records with Sales Representative #1 because Warner Chilcott, as a pharmaceutical provider, is a "health care provider" to whom disclosures of patients' protected information may be shared.  The defendant relies on 45 C.F.R. § 164.506(c)(3), which provides that a "covered entity may disclose protected health information to another covered entity or a health care provider for the payment of activities of the entity that receives the information."  However, 45 C.F.R. § 160.103 specifically defines "health care provider," as used in 45 C.F.R. 164.506(c)(3), as "a provider of

---

[2] *See* Permitted Uses and Disclosures, https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html

services (as defined in … 42 U.S.C. 1395x(u)), a provider of medical or health services (as defined in … 42 U.S.C. 1395x(s)), and any other person or organization who furnishes, bills, or is paid for health care in the normal course of business."

A pharmaceutical company is not a provider of services, as defined in 42 U.S.C. § 1395x(u), and is not a provider of medical or health services, as defined in 42 U.S.C. § 1395x(3).  Nor is a pharmaceutical company an organization or entity that "furnishes, bills, or is paid for health care in the normal course of business."  While the term "health care" is defined to include the "sale or dispensing of a drug… in accordance with a prescription," *see* 45 C.F.R. § 160.103, the term "sale or dispensing" more logically applies to pharmacists, as opposed to manufacturers of pharmaceutical companies.  While a pharmaceutical company manufactures and sells prescription drugs to pharmacies and insurance companies, pharmaceutical companies are not health care providers as defined in the above referenced regulations and in the context of the conduct alleged in the superseding indictment.  Indeed, the language of the "health care provider" exception – "for the payment of activities of the entity that receives the information" – suggests that this exception is intended to apply to an entity that provides some health care to a patient and needs access to that patient's protected health information in order to insure that it receives payment for that care.  That definition surely cannot be stretched to include a pharmaceutical sales representative accessing patients' medical files fill out a paperwork relating to the payment of the drug (and not directly *for* Warner Chilcott's benefit).

       3.      <u>Sales Representative #1 was not a "Business Associate" of the Defendant</u>

45 C.F.R. § 164.502(a)(3) provides that "a business associate may use or disclose protected health information only as permitted by its business associate contract..."  To that end, while a covered entity may disclose protected health information to a business associate, it may

9

only do so through and pursuant to a "business associate contract," the requirements for which are set forth at length in 45 C.F.R. 164.504(e).  Here, there is no allegation (nor any fact known to the government) that the defendant had a business associate contract with Sales Representative #1 that permitted Sales Representative #1 to have access to her patients' medical files.

None of the exceptions to the prohibition on the disclosure of protected patient information cited by the defendant apply to the conduct charged in the superseding indictment. Notably, the impact of the defendant's arguments are far reaching:  the defendant's interpretation of the exceptions to HIPAA's rules against disclosing protected health information would mean that every single pharmaceutical company, and every single pharmaceutical sales representative, could access to patients' protected health information without patient consent.  This result is certainly was not what Congress and HHS had in mind in creating exceptions to the rigid rules prohibiting disclosure in order to effectuate the treatment of a patient, or the payment of treatment for a patient.  Indeed, if that were the case, the regulations would specifically define pharmaceutical companies, or manufacturers of pharmaceutical products, as health care providers.

Moreover, and consistent with the definitions in the regulations cited above, courts have noted that the treatment exception applies when the third party is a person or entity involved in the actual provision of health care.  *See e.g. Gard v. Harris*, 2010 WL 844810, at *4 (Tenn. Ct. App. Mar. 11, 2010) (Letter sent by a specialist to the referring physician about the patient's alleged opioid addiction did not violate HIPAA.); *DelleCurti v. Walgreen Co.*, 70 N.E.3d 111, 115 (2016) (Pharmacist who called another pharmacist to advise against filling a certain patient's prescription did not violate HIPAA).

B.  Count Two Specifically Alleges that the Defendant Acted with Corrupt Intent in Directing Medical Assistant #1 to lie to Special Agents

In an apparent contradiction to her argument that federal law allows the disclosure of patients' protected health information to pharmaceutical companies and pharmaceutical sales representatives, the defendant argues that Count Two, which charges her with witness tampering, fails to state an offense because she was simply advising her medical assistant to invoke her Fifth Amendment right against self-incrimination. *See* Def. Mot. at 19-21. There is no merit to this argument.

The superseding indictment contains the following allegations with respect to Count Two:

- On February 10, 2014, the defendant told Special Agents that Sales Representative #1 did not have access to patients' protected health information;
- The defendant thereafter called Medical Assistant #1 and told Medical Assistant #1 to tell Special Agents that Medical Assistant #1 did not share any medical records;
- The defendant told Medical Assistant #1 that Sales Representative #1 got them in trouble;
- The next day, on or around February 11, 2014, the defendant again ordered Medical Assistant #1 to tell Special Agents that Medical Assistant #1 did not show any medical records to Sales Representative #1; and
- The defendant told Medical Assistant #1 that there is a HIPAA law and there would be hefty fines for them both if people found out that they shared medical records.

S. Indict. ¶ 17. In sum, the allegations are that the defendant (1) knew Sales Representative #1 had accessed her patients' medical records, (2) knew that such access was in violation of HIPAA, and (3) believed that she *and* Medical Assistant #1 would be in trouble if people found out that Sales Representative #1 had accessed her patients' medical records. These allegations are sufficient to state an offense for witness tampering as prohibited by 18 U.S.C. § 1512(b)(3).

The defendant's argument – that the allegations suggest nothing more than a benign suggestion to Medical Assistant #1 that she exercise her Fifth Amendment right against self-incrimination and therefore does not contain any allegation of a corrupt intent – ignores the fact that the defendant is alleged to have acted out of her own self-interest.  At the heart of the allegation is the fact that the defendant believed *she* would be in trouble if Medical Assistant #1 told Special Agents that Sales Representative #1 had access to the defendant's patients' medical records, and so directed her *employee* to provide contrary information to Special Agents.  The defendant's argument that this advice was "not inherently malign" falls apart in the face of an allegation that she was directing someone over whom she had economic power to make a false statement to Special Agents about a matter in which she was personally interested.  *See United States v. Cioffi*, 493 F.2d 1111, 1119 (2d Cir. 1974) (affirming jury instruction that "one who bribes, threatens, coerces a witness to claim [the Fifth Amendment] or advises with corrupt motive a witness to take it, can and does obstruct or influence the administration of justice.").

      C.      <u>Count Three Specifically Charges the Defendant With Obstructing a Criminal Health Care Investigation by Lying to Special Agents</u>

The defendant argues that Count Three, charging her with obstruction of a criminal health care investigation, fails to state an offense because it does not allege either a falsehood or that the defendant knew she was making a false statement.  The plain language of the indictment demonstrates otherwise.

Count Three alleges that the defendant "willfully prevented, obstructed, misled, and delayed, or attempted to prevent, obstruct, mislead, and delay the communication of information and records relating to a violation of a Federal health care offense to a federal investigator."  S. Indict. ¶ 19.  The indictment goes on to specify that the defendant did so by providing "information she knew to be false to agents assigned to the HHS agents…" *Id*.

12

This language alone is sufficient to state an offense, but the indictment goes on to describe with particularity the dates on which the defendant is alleged to have made false statements, the nature of the statements, and that the defendant knew the statements were false. Count Three alleges that, on or around February 10, 2014, the defendant told Special Agents that Warner Chilcott paid her to read studies and provide her opinion. *Id.* at ¶ 20. Approximately one month later, on March 7, 2014, the defendant was again interviewed by Special Agents and, this time, stated that she was paid $3,250 in 2010 for training to become a speaker and $19,500 in 2011 for a research paper that she wrote for Warner Chilcott. *Id.* at ¶ 21. In fact, as alleged in the indictment, Warner Chilcott paid the defendant $23,500 for speaker training and 31 "med ed" events at which she earned a "speaker" fee solely for talking to Sales Representative #1 (*id.* at ¶¶ 5-6). The statutory and factual bases for Count Three sufficiently alleges a crime and apprises the defendant of the specific charge against her.

The defendant's argument that Count Three does not state an offense because it includes a sentence that the government knows to be true is incorrect. The alleged statement – that the defendant "stated that she gave a copy of the paper to Warner Chilcott and sent a copy to the World Health Organization" – cannot and should not be read in isolation.[3] The allegation is that the defendant told Special Agents that she was paid to write a specific paper and that the statement was false because Warner Chilcott had not paid her to write the paper. The fact that the defendant doubled down on her false statements to Special Agents and told them that she had sent the paper to Warner Chilcott and the World Health Organization has no bearing on the ultimate issue of whether she lied to agents about *why* she was paid by Warner Chilcott.

---

[3] The government has no information about whether the defendant sent the alleged paper to the World Health Organization.

D. <u>The Charges in the Superseding Indictment are not Duplicitous and are Alleged with Sufficient Specificity</u>

While the defendant argues that Counts One though Three are duplicitous and lack specificity, her motion to dismiss evidences that she has a clear understanding of exactly what she is alleged to have done wrong. The details that the defendant claims are vague or lacking in Counts One through Three are not necessary for purposes of evaluating the sufficiency of a pleading. For example, the defendant argues that Count One fails to allege "which particular patient or patients had their individually identifiable health information disclosed to the Warner Chilcott sales representative." Def. Mot. at 15. This information is not required. In fact, in *United States ex rel. McDermott v. Genentech, Inc.*, the court stressed that "[a]t no time did the First Circuit suggest that pleading in the necessary degree of specificity should *include information that identified or could be used to identify individual patients*." No. 05-147-P-C, 2006 U.S. Dist. LEXIS 90586, *40 (D. Me. Dec. 14, 2006) (emphasis added). *See also United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013) ("we conclude that, notwithstanding the failure of Stringer's indictment to name the persons whose means of identification were used in the commission of bank fraud, the indictment was constitutionally adequate"). Similarly, the defendant argues that Count One does not allege "on which particular date or dates the information was allegedly disclosed."[4] Def. Mot. at 15. But the First Circuit has held that a general timeframe – which was alleged in the indictment – is permissible when "the exact time of the crime's commission is not important under the statute allegedly violated." *United States v.*

---

[4] The defendant is essentially asking for a heightened pleading standard for charges where one is not, and never has been, required. *See, e.g.*, *United States v. Huet*, 665 F.3d 588, 598 (3d Cir. 2012) (declining to heighten pleading standard beyond that required for Rule 7(c)(1) for aiding and abetting a felon in possession of a firearm where no higher pleading standard had ever been required).

*Nunez*, 687 F.2d 10, 12 (1st Cir. 1981) (citing 1 Wright, Federal Practice and Procedure: Criminal § 125 at 246-47; *United States v. Antonelli*, 439 F.2d 1068, 1070 (1st Cir. 1971)).

The defendant further argues that Counts One through Three should be dismissed as duplicitous because they contains allegations that could be charged separately. This argument fails as a matter of law. First, the fact that conduct may be charged separately does not mean it has to be. *See United States v. Root*, 585 F.3d 145, 150-55 (3d Cir. 2009) (tax evasion for multiple years could be charged in one count as a scheme of tax evasion); *United States v. Cohen*, 35 F.R.D. 227, 231 (N.D. Cal. 1964) (multiple phone calls could be charged as one offense or multiple offenses). Second, duplicity is not fatal to an indictment. *See United States v. Caceres-Prado*, 601 F. Supp. 468, 471 (D. P.R. 1984) (*citing* 1 Wright & Miller, *Criminal*, Section 142 at 474-75 (1982)); *United States v. Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977). Duplicitous counts "may be segregated into a single count, or the Government may be ordered to elect on which count it will proceed." *Caceres-Prado*, 601 F. Supp. at 470.

## II. THE GOVERNMENT WAS ENTITLED TO INTRODUCE EVIDENCE ABOUT WARNER CHILCOTT AND THE DEFENDANT'S RELATIONSHIP WITH WARNER CHILCOTT TO THE GRAND JURY

In a final attempt to persuade the Court to dismiss the superseding indictment, with no bases in law or fact, the defendant accuses the government of misconduct before the grand jury. Ignoring the fact that she is charged with lying to Special Agents about why she was paid by Warner Chilcott, the defendant complains that the government improperly introduced to the grand jury evidence of its investigation into Warner Chilcott and the defendant's financial relationship with Warner Chilcott. In fact, this evidence was properly introduced to the grand jury to provide context as to why Special Agents interviewed the defendant in the first place, and why her statements are believed to be false. The evidence the government elicited before the

grand jury was entirely appropriate, there was absolutely no misconduct, and the defendant's motion to dismiss the superseding indictment on this ground should be denied.

## CONCLUSION

For the reasons stated above, the Court should deny the defendant's motion to dismiss.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   /s/ *Miranda Hooker*
      Miranda Hooker, BBO# 661569
      Youngik Paik, BBO# 660896
      Assistant U.S. Attorneys
      U. S. Attorney's Office
      John Joseph Moakley
      United States Courthouse
      1 Courthouse Way, Suite 9200
      Boston, MA 02210

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

   /s/ *Miranda Hooker*
   Miranda Hooker
   Assistant United States Attorney

DATE:  March 14, 2018