UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| United States of America<br><br>v.<br><br>Rita Luthra,<br><br>Defendant. | CRIMINAL NO. 15-CR-30032-MGM |

### DR. LUTHRA'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF SELECTIVE/VINDICTIVE PROSECUTION AND PROSECUTORIAL MISCONDUCT

**Everything the Government Seeks To Exclude Is Admissible Under Federal Rule of Evidence 401 Because It Demonstrates That Dr. Luthra Had Absolutely No Reason to Lie to the Investigators**

Every piece of evidence the government seeks to exclude is admissible as relevant evidence under Rule 401, as all of it makes one fact of consequence more probable than it would be without the evidence – that Dr. Luthra had absolutely no reason whatsoever to lie to the federal agents regarding their investigation of possible Anti-Kickback Statute ("AKS") violations. Everything the government seeks to exclude is clearly relevant to Count Three of the superseding indictment, which alleges that Dr. Luthra lied to obstruct the agents' investigation of Anti-Kickback Statute ("AKS") violations.

**Evidence of the Dropped AKS Charges Against Dr. Luthra is Relevant Because it Confirms that Dr. Luthra Had Absolutely No Reason to Lie**

The government alleges that Dr. Luthra told them some inconsistent information, and lied about getting paid for a research paper, all in an attempt to obstruct the government's investigation into AKS violations.

But Dr. Luthra had <u>absolutely no reason to lie</u>. She hadn't done anything wrong. She'd entered into an <u>entirely legal</u> consulting agreement with Warner Chilcott. She'd eaten some bagels that the Warner Chilcott sales representative had brought to her office. And she was <u>never asked</u> by the investigators about any alleged barbecue. So she had no reason at all – none whatsoever – to lie to the investigators.

The fact that the government dropped the AKS charges against her is absolute stone-cold relevant evidence that she had no reason to lie. In fact, under Rule 401, there really could not be any better type of evidence: the government looked at the facts, realized that she had not committed any crime, and so abandoned the AKS charge against her.

**<u>Evidence Regarding Other Doctors Is Directly Relevant</u>**
**<u>To Show that Dr. Luthra Had Absolutely No Reason to Lie</u>**

The government alleges that Dr. Luthra lied to avoid getting in trouble for violating the AKS. The government questioned Dr. Luthra twice regarding her consulting payments from Warner Chilcott, <u>which were disclosed on her tax returns</u>, and which she had received under terms of the <u>entirely legal</u> consulting agreement that she, along with nearly 2,000 other doctors, had entered into with Warner Chilcott. The government also questioned her twice about the fact that she had accepted <u>bagels</u> from the Warner Chilcott sales representative who called on her in her office. The agents never asked her about any barbecue.

Given the two areas of inquiry by the agents (the legal payments and bagels), and the resulting accusations in Count Three of the superseding indictment against Dr. Luthra of lying to obstruct the agents' investigation, the conduct of other doctors is clearly relevant to show how absolutely <u>impossible</u> it would have been for Dr. Luthra to have thought that she needed to lie to the agents to obstruct their investigation, when the <u>most</u> that they were inquiring about was:

1) Her <u>perfectly legal</u> consulting agreement with Warner Chilcott; and

2

    2) Whether she had <u>eaten bagels</u> brought by the Warner Chilcott sales representative to her office.

    The evidence of the criminal excesses of other physicians who had signed the same consulting agreement with Warner Chilcott is powerful, relevant evidence that Dr. Luthra had nothing to lie about.  For example:

- Many of the physicians who entered into the Master Speaker Services Agreement with Warner Chilcott were paid far more than Dr. Luthra.  One spreadsheet produced by the government shows that at the time of its creation, Dr. Luthra had been paid $6,000 of the $23,500 she eventually received.  Yet the spreadsheet shows that other physicians who had entered into the Master Speaker Services Agreement had, <u>by that same time</u>, already been paid amounts of $76,500, $61,550, $58,000, $56,000, $39,450, $33,000, $31,500, $30,000, $28,500, $27,500, $27,000, $26,250, $26,000, and $24,500.  Spreadsheet produced in electronic "native" format, Bates-stamped PV00420756.  *See* Exhibit B, Affidavit of Stephen E. Spelman, attached to Dr. Luthra's Motion to Dismiss the (Original) Indictment [Docket No. 87].

- Three male Western Mass physicians were paid $250 more by Warner Chilcott than Dr. Luthra for each Atelvia "med ed" event the male physicians participated in.  Spreadsheet Bates-stamped RL_249-255.  *Id*.

- In 2011, a male Western Mass physician was paid $2,750 more by Warner Chilcott than Dr. Luthra was for the Atelvia "med eds" he participated in.  *Id*.

- The government has stated expressly in its own court filings that other physicians committed health care fraud by receiving kickbacks from Warner Chilcott, even though it has prosecuted none of them.  For example:  "By paying kickbacks to physicians to induce them to prescribe Warner Chilcott products … Warner Chilcott both defrauded Medicare and other health benefit programs and obtained money from these programs by false or fraudulent representations."  Government's Assented-To Motion For Alternative Victim Notification, Document 4; Appendix A, Details of the Offense and Sentencing Guidelines Analysis, Document 14-1, *U.S. v. Warner Chilcott Sales (U.S.) L.L.C.*, 1:15-cr-10327-FDS, p. 11.

    Warner Chilcott called each visit by one of their sales representatives to a Massachusetts physician a "med ed."  Unlike in most other states in the U.S., in Massachusetts at the time relevant to the indictment, pharmaceutical companies were not allowed to provide meals to physicians outside the setting of the physician's office or hospital.  *See* 105 CMR § 970.000

(2009). Thus, unlike in most states, pharmaceutical companies could not sponsor an "evening out" at a restaurant where, over dinner, one physician would brief other physicians on a new drug. Therefore, when Dr. Luthra met with the Warner Chilcott sales representative in her office during "med eds," and accepted what the original indictment termed "free meals," she was complying specifically with the requirements of Massachusetts law, as the Warner Chilcott sales representative was doing the only thing the law allowed him to do – bring food to her in her office. This standard Massachusetts practice was a far cry from what was going on elsewhere in the country, even though <u>no</u> other physicians were prosecuted for the following:

- "[P]hysicians often ordered the most expensive items on the menu along with expensive wine. Some physicians ordered extra meals and/or bottles of wine to bring home, and others ordered a restaurant gift card to bring home with them. Some sales representatives paid for their highest-prescribing physicians to go out to dinner on their own. Information, ECF# 1, *US v. Warner Chilcott Sales (U.S.) L.L.C.*, 1:15-cr-10327-FDS, ¶ 26, p. 8 of 21.

- "[S]ome sales representatives also gave physicians gift cards to restaurants and other stores. Many sales representatives paid for office holiday parties as well as parties at clubs and on yachts." *Id.*, ¶ 27, p. 8 of 21.

- "Sales representatives spent lavishly on physicians. Some sales representatives allowed physicians to go to dinner without them, using the Warner credit card. Other sales representatives gave gift cards and other gifts to physicians, expensing them as 'med eds.'" Government's Sentencing Memorandum, ECF# 20, *US v. Warner Chilcott Sales (U.S.) L.L.C.*, 1:15-cr-10327-FDS, p. 4 of 17.

- "On November 11, 2011, a physician in sales representative 4's district went out to dinner at an expensive New York restaurant, without the sales representative present, and spent $1,778, including alcohol, suckling pig, crab cake platters, and a $550 gift card. Sales representative 4 expensed the event as a 'med ed.'" Indictment, ECF# 1, *United States v. W. Carl Reichel*, 1:15-cr-10324-DPW, p. 13 of 17.

- "Sales representative 5, another successful sales representative in DM 5's district, cultivated HCP [health care provider] 1, a high-prescribing physician, to be a 'speaker.' Sales representative 5 paid HCP 1 as a 'speaker' when the dinners were mere social events. Sales representative 5 also paid for HCP 1's office holiday party at a restaurant and gave HCP 1 a gift card worth several hundred dollars to an expensive New York restaurant, expensing both items as 'med eds.' HCP 1 prescribed Atelvia for numerous patients, in part, in exchange for these payments." *Id*.

- "On or about April 1, 2011, sales representative 8 took out a number of physicians to an expensive restaurant at the Foxwoods casino in Connecticut. Sales representative 8 expensed the dinner, which cost approximately $4,500, as a 'med ed.' Sales representative 8 also held 'med ed' dinners at an expensive steakhouse at the Mohegan Sun casino in Connecticut on several occasions. Sales representative 8 and other sales representatives in New England also provided gift cards and other gifts to physicians to induce them to prescribe Warner Chilcott products. Sales representative 8 and other sales representatives in New England also provided remuneration to physicians' employees to induce them to prepare prior authorizations for Atelvia." *Id.*, pp. 14-15.

- "[A] sales representative held a 'med ed' at a tango dancing event." Government's Response To Defendant's Objections To Certain Exhibits, Document 209, *U.S. v. Reichel*, p. 3.

All of these physicians committed crimes far worse than anything Dr. Luthra was even alleged to have done, or that Dr. Luthra was even questioned about by the agents. None of these other physicians were prosecuted. And the agents didn't ask Dr. Luthra about being taken to fancy restaurants or being treated to parties on yachts by Warner Chilcott. They asked her about her consulting agreement and whether she ate bagels. That being the case – why would Dr. Luthra feel the need to lie? This is why evidence of the criminal acts of the other physicians is relevant under Rule 401. The fact that the government knew about the crimes of these other doctors, but allowed them to go unpunished is powerful, relevant evidence to show that Dr. Luthra had nothing to hide, and so no reason to lie.

Moreover, the government's claim that Dr. Luthra is the only doctor being prosecuted because she was the only one involved in lying is simply not true. **At least one other physician lied to the government's investigators, and was not prosecuted**:

- **Dr. Robert Flores admitted to federal agents that he had lied to them when he first spoke with them** about prior authorizations for Atelvia. Dr. Flores told the agents that with respect to his patients, in fact the Warner Chilcott sales representative had completed all the prior authorizations for Atelvia. Whenever Dr. Flores got a denial from an insurance company with respect to paying for an Atelvia prescription he had written, he would give the denial to the Warner Chilcott sales representative, along with the patient's medical chart, so that the sales representative could complete and submit a

prior authorization form. RL_012572-80. *See* Exhibit I, attached to Dr. Luthra's Motion to Dismiss the (Original) Indictment [Docket No. 87].

Lying to the investigators is <u>exactly</u> what Dr. Luthra is being prosecuted for on Count Three of the superseding indictment. Thus, the government's claim that Dr. Luthra is being prosecuted because she is the only one who told an employee to lie is thin at best.

All of these examples are relevant to show that Dr. Luthra had no reason to lie to the investigators when she spoke to them, because she had absolutely nothing to hide, compared to the numerous physicians who were living the high life in fancy restaurants and on yachts, all on Warner Chilcott's dime. She literally had done nothing wrong.

**<u>Evidence of the Dropped AKS Charges Against Dr. Luthra is Also Relevant Because it Proves Dr. Luthra's Indictment was a Mere Pretext to Force Her To Testify in the Trial of the President of Warner Chilcott Pharmaceuticals</u>**

Dr. Luthra was arrested at her home in the early morning of October 22, 2015. The prosecutors in this case immediately put out a press release announcing the arrest and the AKS charges against her. The title of the press release, in large bold font, was "**Springfield Doctor Indicted in Anti-Kickback Case**." https://www.justice.gov/usao-ma/pr/springfield-doctor-indicted-anti-kickback-case, accessed April 11, 2018. The information in the release was reported on by Western Mass media, Boston media, national media, and international media.

Seven days later, on October 29, 2015, the prosecutors in Dr. Luthra's case put out another press release. That press release announced that Warner Chilcott Pharmaceuticals had agreed to plead guilty to health care crimes and would pay a $125 million fine. But also included in that press release was a separate section referring to Dr. Luthra. The three-paragraph section was headlined, in bold underlined font: "**<u>Rita Luthra Indictment</u>**." The first topic in the release, and the main issue discussed in the release, was the AKS charge against her. https://www.justice.gov/usao-ma/pr/warner-chilcott-agrees-plead-guilty-health-care-fraud-

scheme-and-pay-125-million, accessed April 11, 2018.  Again, the information in the release, including the information about the AKS charges against Dr. Luthra, was reported on by Western Mass media, Boston media, national media, and international media.

Two weeks after the second press release, on November 12, 2015, the prosecutors in this case issued a third press release.  This press release primarily concerned the guilty pleas of Warner Chilcott district sales managers for health care fraud and HIPAA violations.  But it also stated that Dr. Luthra had been indicted for "accepting kickbacks" and other crimes. https://www.justice.gov/usao-ma/pr/former-pharma-company-manager-pleads-guilty-criminal-hipaa-violation, accessed April 11, 2018.  The information in the release, including information about the AKS charges against Dr. Luthra, was reported on by national media.

The president of Warner Chilcott Pharmaceuticals, Carl Reichel, had been indicted in October 2015 for conspiracy to violate the AKS, by the same prosecutors prosecuting Dr. Luthra.  These prosecutors had offered Dr. Luthra immunity if she testified against Reichel.  Apparently they wanted her to testify that she had somehow been inveigled by Warner Chilcott (under Reichel's direction) to violate the AKS.  Mr. Reichel's trial started in the U.S. District Court in Boston on May 19, 2016 and concluded with a verdict on June 17, 2016.

With the Reichel trial now concluded, the prosecutors did not need to keep their spurious AKS allegations against Dr. Luthra alive.  Thus, when Dr. Luthra then moved to dismiss the AKS charge against her [Docket No. 87], the prosecutors didn't even fight it.  In an absolutely unheard-of move for a typically aggressive U.S. Attorney's Office, they simply abandoned what had been their main, publicly-trumpeted charge.

This abandonment of the AKS charge against Dr. Luthra, which is the charge the prosecutors had repeatedly featured in multiple press releases, including press releases that

weren't even about Dr. Luthra, is absolutely relevant under Rule 401 to show that the reason Dr. Luthra is the only doctor in the United States who is being prosecuted as part of the government's investigation into Warner Chilcott, was absolutely pretextual.

**The Government Has Not Even Argued That Evidence of Its Repeated Prosecutorial Misconduct Should Be Excluded**

The government sets out in its motion, in some detail, evidence of its repeated prosecutorial misconduct throughout this case. But, interestingly, nowhere in the Argument section of its motion does it address why evidence of its prosecutorial misconduct should be excluded from the evidence at the trial. Since the government has not even bothered to argue that the evidence of its prosecutorial misconduct should be excluded, the Court should not exclude it.

Moreover, in America, prosecutors should be proud of their conduct. They should never try to hide it. Our prosecutors are supposed to seek justice, and not just seek convictions. Our prosecutors are supposed to follow the law and the rules, and not present misleading testimony. Our prosecutors are supposed to be the ones calling for the bright illumination of misdeeds, and not shamefully seek to cover up their own misconduct. The prosecutors' misconduct in this case is relevant evidence of their attempts to improperly "bend" the actual facts of the investigation in this matter, and thus is admissible under Rule 401 for the jury's consideration at trial.

WHEREFORE, Dr. Luthra respectfully requests that this Honorable Court deny the government's Motion *in Limine* to Exclude Evidence of Selective/Vindictive Prosecution and Prosecutorial Misconduct.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | RITA LUTHRA, M.D.<br>By her attorney, |
|  | /s/ Stephen E. Spelman<br>Stephen E. Spelman (BBO #632089)<br>12 Wellington Drive<br>East Longmeadow, Mass.  01028<br>(413) 530-4316 |
| Dated:  April 12, 2018 | s.e.spelman@gmail.com |

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that the foregoing document, filed through the ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF), on this 12th day of April, 2018.

/s/ Stephen E. Spelman